Clay L. SHAW

v.

Jim GARRISON, Individually, et al.

Civ. A. No. 68-1063.

United States District Court
E. D. Louisiana,
New Orleans Division.

July 23, 1968.

Judgment Affirmed Dec. 9, 1968.

See 89 S.Ct. 453.

Edward F. Wegmann, William J. Wegmann and Salvatore Panzeca and F. Irvin Dymond, New Orleans, La., for plaintiff.

Numa V. Bertel, Jr., Asst. Dist. Atty., James L. Alcock, Exective Asst. Dist. Atty., for defendant.

Before AINSWORTH, Circuit Judge, and HEEBE and COMISKEY, District Judges.

PER CURIAM:

The plaintiff Clay L. Shaw is under indictment in the Criminal District Court for the Parish of Orleans, Louisiana, for having "wilfully and unlawfully conspire[d] * * * to murder John F. Kennedy." He has filed this suit against Jim Garrison, District Attorney for the Parish of Orleans, and two of his assistants for declaratory and injunctive relief in an effort to arrest the prosecution. He was initially charged on March 1, 1967 by the defendant Garrison with participating in a conspiracy to murder President Kennedy. Thereafter on March 14, 1967 a preliminary hearing was held in the State court before a three-judge panel to determine whether there was sufficient evidence to establish probable cause to charge Shaw with conspiracy.

The State offered four witnesses, one of whom, Perry Raymond Russo, testified that he was present when the plaintiff and Lee Harvey Oswald and David William Ferrie conspired to kill the President. Another witness, Vernon Bundy, stated that he saw plaintiff having a conversation with Oswald near Lake Pontchartrain in New Orleans. The three-judge panel ruled that sufficient evidence had been presented to establish probable cause that a crime had been committed and to justify continuing the prosecution against the plaintiff. On March 22, 1967, plaintiff was indicted for conspiracy to murder John F. Kennedy by the Orleans Parish Grand Jury. On August 1, 1967, the defendants moved to select a trial date, but on September 27, 1967, plaintiff asked for a continuance, or a change of venue. A hearing was held on the motion and upon the suggestion of the defendants Garrison and Alcock, the court granted a continuance until February, 1968. On February 19, 1968, citing the great publicity the case had received, the plaintiff moved the Criminal District Court to order a change of venue. An extensive evidentiary hearing was conducted by the trial judge after which the motion was denied on April 4. The Supreme Court of the State of Louisiana denied plaintiff's application for writs of certiorari on the question of venue on April 23, 1968. The trial was then set for June 11, 1968.

Now, on May 27, 1968, nearly 15 months after the plaintiff was originally charged, he filed this suit asking for an injunction against the prosecution for which trial was set on June 11, 1968. A temporary restraining order against taking any further action in the prosecution was issued by one member of our panel on May 28, 1968, after which this three-judge court was constituted to hear the case.

Plaintiff's complaint contains numerous allegations of constitutional infirmities in the State prosecution against him. He contends that the preliminary hearing was illegal because it was heard before a three-judge state court, which was not authorized by the Louisiana statutes concerning preliminary hearings; that

the defendants made a search of plaintiff's premises and confiscated much of his property under the authority of an illegally issued search warrant; that the indictment was returned on insufficient evidence; that he is prejudiced by the considerable publicity which this case has received; and that the state court has unjustly denied his application and supplemental application for a bill of particulars. He asks that this court declare as unconstitutional Articles 402,[1] 403,[2] 409,[3] and 413[4] of the Louisiana Code of Criminal Procedure and Article VII, Section 41 of the Louisiana Constitution of 1921,[5] which provisions deal with the

1. "Art. 402. *Service of women as jurors*
 A woman shall not be selected for jury service unless she has previously filed with the clerk of court of the parish in which she resides a written declaration of her desire to be subject to jury service."

2. "Art. 403. *Exemption from jury service*
 The following persons are exempt from jury service, but the exemption is personal to them and is not a ground for challenge:
 (1) The governor, lieutenant governor, state comptroller, state treasurer, secretary of state, superintendent of public education, their clerks and employees, the members, officers, and clerks of the legislature, and the judges and active officers of the several courts of this state;
 (2) Any other public official, if jury service would seriously interfere with the performance of his official duties;
 (3) Attorneys-at-law, peace officers, ministers of the gospel, physicians and dentists actively engaged in the practice of their professions, school teachers, school bus drivers, pharmacists, members of paid fire departments, chiefs and their first assistants of bona fide volunteer fire departments, and persons who are required to travel regularly and routinely in the course and scope of their employment;
 (4) Persons who because of age, sickness, or other physical infirmity would suffer serious detriment if required to serve as a juror; and
 (5) Persons who have served as grand or petit jurors in criminal cases or as trial jurors in civil cases during a period of twelve months immediately preceding their selection for jury service."

3. "Art. 409. *Selection of general venire in Orleans parish*
 "In the Parish of Orleans, the jury commission shall select impartially at least seven hundred fifty persons having the qualifications to serve as jurors, who shall constitute the general venire.
 A list of the persons so selected shall be prepared and certified by the commission as the general venire list and shall be kept as part of the records of the commission.

The name and address of each person on the list shall be written on a separate slip of paper which shall be placed in a box labeled 'General Venire Box.'
 No drawing shall be made from a general venire containing fewer than seven hundred fifty names, except when the court orders the drawing of tales jurors.
 After the jury commission has selected the general venire, it shall lock and seal the general venire box and deliver it to the secretary of the commission, as the custodian thereof."

4. "Art. 413. *Method of impaneling of grand jury; selection of foreman*
 The grand jury shall consist of twelve persons qualified to serve as jurors, selected or drawn from the grand jury venire.
 In parishes other than Orleans, the court shall select one person from the grand jury venire to serve as foreman of the grand jury. The sheriff shall draw indiscriminately and by lot from the envelope containing the remaining names on the grand jury venire a sufficient number of names to complete the grand jury. The envelope containing the remaining names shall be replaced into the grand jury box for use in filling vacancies as provided in Article 415.
 In the Parish of Orleans, the court shall select twelve persons from the grand jury venire, who shall constitute the grand jury. The court shall thereupon select one of the jurors to serve as foreman."

5. "Art. 7, § 41. *Selection of jurors; women jurors; trial by judge; trial by jury*
 The Legislature shall provide for the election and drawing of competent and intelligent jurors for the trial of civil and criminal cases; provided, however, that no woman shall be drawn for jury service unless she shall have previously filed with the clerk of the District Court a written declaration of her desire to be subject to such service. All cases in which the punishment may not be at hard labor shall, until otherwise pro-

qualifications and manner of selection of jurors. He also attacks the constitutionality of Articles 433 [6] and 434 [7] of the Louisiana Code of Criminal Procedure, which articles deal with grand jury proceedings. He further contends that Articles 484 [8] and 485 [9] of the Louisiana Code of Criminal Procedure are unconstitutional; these provisions are concerned with bills of particulars. He also asks that Articles 627 [10] and 912 [11] of the same code, which deny the defendant the

vided by law, be tried by the judge without a jury. Cases, in which the punishment may be at hard labor, shall be tried by a jury of five, all of whom must concur to render a verdict; cases, in which the punishment is necessarily at hard labor, by a jury of twelve, nine of whom must concur to render a verdict; cases in which the punishment may be capital, by a jury of twelve, all of whom must concur to render a verdict."

6. "Art. 433. *Persons present during grand jury sessions*

A. Only the following persons may be present at the sessions of the grand jury:

(1) The district attorney and assistant district attorneys, or any one or more of them;

(2) The witness under examination;

(3) A person sworn to record the proceedings of, and the testimony given before, the grand jury; and

(4) An interpreter sworn to translate the testimony of a witness who is unable to speak the English language.

B. No person, other than a grand juror, shall be present while the grand jury is deliberating and voting.

C. A person who is intentionally present at a meeting of the grand jury, except as authorized by Paragraph A of this article, shall be in constructive contempt of court."

7. "Art. 434. *Secrecy of grand jury meetings*

Members of the grand jury, all other persons present at a grand jury meeting, and all persons having confidential access to information concerning grand jury proceedings, shall keep secret the testimony of witnesses and all other matters occurring at, or directly connected with, a meeting of the grand jury. However, after the indictment, such persons may reveal statutory irregularities in grand jury proceedings to defense counsel, the district attorney, or the court, and may testify concerning them. Such persons may disclose testimony given before the grand jury, at any time when permitted by the court, to show that a witness committed perjury in his testimony before the grand jury. A witness may discuss his testimony given before the grand jury with counsel for a person under investigation

or indicted, with the district attorney, or with the court.

Any person who violates the provisions of this article shall be in constructive contempt of court."

8. "Art. 484. *Bill of particulars*

A motion for a bill of particulars may be filed of right before trial or within ten days after arraignment, whichever is earlier. After expiration of the ten-day period the court may permit the filing of such a motion until the commencement of trial. When a motion is filed, or on its own motion, the court may require the district attorney to furnish a bill of particulars setting up more specifically the nature and cause of the charge against the defendant.

Supplemental bills of particulars or a new bill may be ordered by the court at any time before the trial begins.

When a bill of particulars is furnished, it shall be filed of record and a copy of the bill given to the defendant."

9. "Art. 485. *Effect of inconsistent or limiting allegations of bill of particulars*

If it appears from the bill of particulars furnished under Article 484, together with any particulars appearing in the indictment, that the offense charged in the indictment was not committed, or that the defendant did not commit it, or that there is a ground for quashing the indictment, the court may on its own motion, and on motion of the defendant shall, order that the indictment be quashed unless the defect is cured. The defect will be cured if the district attorney furnishes, within a period fixed by the court and not to exceed three days from the order, another bill of particulars which either by itself or together with any particulars appearing in the indictment so states the particulars as to make it appear that the offense charged was committed by the defendant, or that there is no ground for quashing the indictment, as the case may be."

10. "Art. 627. *Appeals*

If a change of venue is granted to the defendant over the objection of the state, or if the court denies an application by

11. See note 11 on page 942.

right to appeal from the denial of a motion for change of venue, be declared unconstitutional. He then shifts his constitutional assault to the Louisiana Criminal Code and asserts that LSA–R.S. 14:26,[12] Louisana's conspiracy statute (under which plaintiff was indicted), is unconstitutional because of vagueness, in that it is written in broad, general and indefinite language and the penalties for the crime are not certain. He also contends that 14:26 is void because it does not define the word "crime" as contained in the statute or designate what crimes the statute has reference to when it states that a conspiracy to commit crime is a criminal offense. In a memorandum filed in opposition to a motion to dismiss subsequently brought by the defendants, plaintiff also attacks the conspiracy statute as being violative of the First Amendment right of freedom of speech. Plaintiff alleges that he is suffering irreparable injury because of the pending criminal prosecution and prays that it be enjoined. In an amendment to his complaint plaintiff further alleges that defendants are not prosecuting him in good faith but "have charged him solely and only for the purpose of using him as a vehicle to the forum which they sought for their attacks on the Warren Report." Plaintiffs also claim that the defendants "are not motivated by an expectation of securing a valid conviction," but their actions are part of a plan to harass plaintiff from asserting his rights to free speech and assembly and to "harass any and all individual citizens who disagree with their theories as to the assassination of President Kennedy, how the assassination came about, who participated in the assassination, the political consequences of the death of the

the state for a change of venue, the state shall have the right to appeal from the ruling, within the legal delays for making a motion for an appeal before a trial on the merits. Prior to sentence the defendant may not appeal from a ruling changing or refusing to change the venue."

11. "Art. 912. *Judgments or rulings appealable*

A. Only a final judgment or ruling is appealable.

B. The state cannot appeal from a verdict of acquittal. Adverse judgments or rulings from which the state may appeal include, but are not limited to, judgments or rulings on:

(1) A motion to quash an indictment or any count thereof;

(2) A plea of time limitation;

(3) A plea of double jeopardy;

(4) A motion in arrest of judgment;

(5) A motion to change the venue;

(6) A motion to recuse; and

(7) An order in an extradition proceeding.

C. The judgments or rulings from which the defendant may appeal include, but are not limited to:

(1) A judgment which imposes sentence;

(2) A ruling upon a motion by the state declaring the present insanity of the defendant; and

(3) A ruling ordering the defendant to be extradicted."

12. "R.S. 14:26. *Criminal conspiracy*

Criminal conspiracy is the agreement or combination of two or more persons for the specific purpose of committing any crime; provided that an agreement or combination to commit a crime shall not amount to a criminal conspiracy unless, in addition to such agreement or combination, one or more of such parties does an act in furtherance of the object of the agreement or combination.

Where the intended basic crime has been consummated the conspirators may be tried for either the conspiracy or the completed offense, and a conviction for one shall not bar a prosecution for the other.

Whoever is a party to a criminal conspiracy to commit a crime punishable by death or life imprisonment, shall be imprisoned at hard labor for not less than one nor more than twenty years.

Whoever is a party to a criminal conspiracy to commit the crimes of theft or of receiving stolen things shall be fined not more than two hundred dollars, or imprisoned for not more than one year, or both.

Whoever is a party to a criminal conspiracy to commit any other crime shall be fined or imprisoned, or both, in the same manner as for the offense contemplated by the conspirators; but such fine or imprisonment shall not exceed one-half of the largest fine, or one-half the longest term of imprisonment prescribed for such offense, or both."

President, and the integrity of the members of the Warren Commission." In the amended complaint plaintiff also adds Article 782 [13] of the Louisiana Code of Criminal Procedure to the list of provisions which he claims are unconstitutional. This article states, *inter alia,* that cases in which the punishment is necessarily at hard labor shall be tried by a jury composed of twelve jurors, nine of whom must concur to render a verdict.

Plaintiff has also requested that we grant a declaratory judgment decreeing that the report of the Warren Commission to the President of the United States, pursuant to Executive Order No. 11130, is valid, accurate and correct, binding and controlling upon all courts of the United States, and admissible in evidence in the state court prosecution. In addition, plaintiff prays that we grant a mandatory injunction against the defendants compelling them to furnish to plaintiff certain documents relative to the prosecution.

### I.

After the suit was filed, plaintiff filed a motion to join the Attorney General of the United States under Rule 19 of the Federal Rules of Civil Procedure [14] as a defendant or an involuntary plaintiff, and the court's jurisdiction was invoked under 28 U.S.C. § 1361 [15] which grants

13. "Art. 782. *Number of jurors com-composing jury; number which must concur*

Cases in which the punishment may be capital shall be tried by a jury of twelve jurors, all of whom must concur to render a verdict. Cases in which the punishment is necessarily at hard labor shall be tried by a jury composed of twelve jurors, nine of whom must concur to render a verdict. Cases in which the punishment may be imprisonment at hard labor, shall be tried by a jury composed of five jurors, all of whom must concur to render a verdict. Except as provided in Article 780, trial by jury may not be waived."

14. "Rule 19.

(a) *Persons to be Joined if Feasible.* A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and his joinder would render the venue of the action improper, he shall be dismissed from the action.

(b) *Determination by Court Whenever Joinder not Feasible.*

If a person as described in subdivision (a) (1)–(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

(c) *Pleading Reasons for Nonjoinder.* A pleading asserting a claim for relief shall state the names, if known to the pleader, of any persons as described in subdivision (a) (1)–(2) hereof who are not joined, and the reasons why they are not joined.

(d) *Exception of Class Actions.* This rule is subject to the provisions of Rule 23. As amended Feb. 28, 1966, eff. July 1, 1966."

15. "28 U.S.C. § 1361. *Action to compel an officer of the United States to perform his duty*

The district courts shall have original jurisdiction of any action in the nature

to federal district courts original jurisdiction of any action in the nature of mandamus to compel an officer of the United States or any agency thereof to perform a duty owed to the plaintiff, and § 1391(e) [16], relating to venue requirements for civil actions in which officers of the United States, or any agency thereof are defendants. Plaintiff argues that 28 U.S.C. § 509 [17] vests all functions of officers of the Department of Justice in the Attorney General. He then cites 28 U.S.C. § 547, which provides:

> "Except as otherwise provided by law, each United States attorney, within his district, shall * * * (2) prosecute or defend, for the Government, all civil actions, suits or proceedings in which the United States is concerned: * * *."

The Court has strong reservations as to whether, by virtue of § 509, the Attorney General, rather than the United States Attorney for the Eastern District of Louisiana, may be joined. But it is not necessary that we dispose of that question, as we are of the opinion that neither the Attorney General nor the United States Attorney may be joined in this case under § 547.

Under § 547 the plaintiff argues that it is a proceeding with which the United States is concerned. Plaintiff argues that this is such a case because of the defendants' attempts to discredit the Report of the Warren Commission and several officers and agencies of the United States Government and their alleged effort to destroy the confidence of the American people in the government of the United States. Plaintiff also reiterates that the validity of the Warren Report is an issue in this case since he has asked for a declaratory judgment as to its accuracy.

The United States Attorney for the Eastern District of Louisiana has informed the Court that the Attorney General objects to being made a party to this suit. In pleadings which were subsequently filed by the United States Attorney it is suggested that the Court lacks jurisdiction over the Attorney General; that the venue is improper; that 28 U.S.C. § 1361 and Rule 19 of the Federal Rules of Civil Procedure are inapplicable to this case; and that there is no justifiable case or controversy as far as the Attorney General is concerned. It is unnecessary that we consider these questions further because of our belief that we cannot interfere with the Attorney General's decision which would constitute an infringement by us upon the discretion of the executive branch of the United States government. The Attorney General's absolute discretion in deciding whether or not to prosecute criminal cases was confirmed by the Fifth Circuit Court of Appeals in Smith v. United States, 375 F.2d 243 (5th Cir., 1967). In our opinion, the Attorney General and the executive branch of the

of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

16. "28 U.S.C. § 1391(e) *Venue generally*
"(e) A civil action in which each defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, may, except as otherwise provided by law, be brought in any judicial district in which: (1) a defendant in the action resides, or (2) the cause of action arose, or (3) any real property involved in the action is situated, or (4) the plaintiff resides if no real property is involved in the action.

The summons and complaint in such an action shall be served as provided by the Federal Rules of Civil Procedure except that the delivery of the summons and complaint to the officer or agency as required by the rules may be made by certified mail beyond the territorial limits of the district in which the action is brought."

17. "28 U.S.C. § 509. *Functions of the Attorney General*
All functions of other officers of the Department of Justice and all functions of agencies and employees of the Department of Justice are vested in the Attorney General * * *."

government have the same discretion in deciding whether the United States is concerned in a particular civil action. In Newman v. United States, 127 U.S. App.D.C. 263, 382 F.2d 479, 482 (1967), a case involving the duties of the United States Attorney, the Court of Appeals for the District of Columbia said:

"It is assumed that the United States Attorney will perform his duties and exercise his powers consistent with his oaths; and while this discretion is subject to abuse or misuse just as is judicial discretion, deviations from his duty as an agent of the Executive are to be dealt with by his superiors.

"The remedy lies ultimately within the establishment where power and discretion reside. The President has abundant supervisory and disciplinary powers—including summary dismissal —to deal with misconduct of his subordinates; it is not the function of the judiciary to review the exercise of executive discretion whether it be that of the President himself or those to whom he has delegated certain of his powers."

We agree with this statement and accordingly deny the plaintiff's motion to compel the Attorney General to be made a party to this action.

## II.

The defendants filed a motion to dismiss the plaintiff's action for failure to state a claim upon which relief can be granted. Since documents outside the pleadings, namely, exhibits and a complete transcript of the state preliminary hearing, are being considered, we treat this as a motion for a summary judgment.

The defendants argue that this suit should be dismissed because 28 U.S.C. § 2283 [18] prohibits a federal court from enjoining pending state court proceedings. On the other hand, the plaintiff contends that § 2283 should not apply because of the exceptional circumstances he has alleged.

In deciding whether the circumstances alleged by plaintiff entitle him to the injunctive relief, it is first necessary to consider some of the more important cases dealing with the question of when federal courts may enjoin state court criminal prosecutions. In Douglas v. City of Jeannette, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324 (1943), plaintiffs, Jehovah's Witnesses, brought a suit in the federal district court to restrain threatened criminal prosecution of them in the state courts by the city and its mayor for violation of a city ordinance prohibiting the solicitation of orders for merchandise without first procuring a license from the city authorities and paying a license tax. Plaintiffs were distributing religious pamphlets without obtaining a license and were threatened with prosecution under this ordinance unless they procured licenses. They alleged that the ordinance was an unconstitutional abridgement of free speech, press and religion in violation of the First Amendment. Although in Murdock v. Commonwealth of Pennsylvania, 319 U.S. 105, 63 S.Ct. 870, 87 L.Ed. 1292 (1943), decided on the same day as *Douglas*, the Supreme Court declared the same ordinance unconstitutional, it refused to hold in the *Douglas* case that an injunction should issue against any threatened state prosecutions. The Court stated that federal courts should refuse "to interfere with or embarrass threatened proceedings in state courts save in those exceptional cases which call for the interposition of a court of equity to prevent irreparable injury which is clear and imminent * * *." 319 U.S. at 163, 63 S.Ct. at 881. The Court went on to say, "No person is immune from prosecution in good faith for his alleged criminal acts. Its imminence, even though alleged to be in violation of con-

18. "28 U.S.C. § 2283. *Stay of State court proceedings*
 A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

stitutional guarantees, is not a ground for equity relief since the lawfulness or constitutionality of the statute or ordinance on which the prosecution is based may be determined as readily in the criminal case as in a suit for an injunction." Ibid. The Court found that the declared intention to institute prosecutions against plaintiffs was not sufficient to establish irreparable injury in the circumstances of that case.

In Stefanelli v. Minard, 342 U.S. 117, 72 S.Ct. 118, 96 L.Ed. 138 (1951), the Supreme Court held that a federal injunction should not issue against using allegedly illegally seized evidence in a state criminal trial and gave this clear statement of the considerations governing the federal policy against enjoining state prosecutions:

> "The consequences of exercising the equitable power here invoked are not the concern of a merely doctrinaire alertness to protect the proper sphere of the States in enforcing their criminal law. If we were to sanction this intervention, we would expose every State criminal prosecution to insupportable disruption. Every question of procedural due process of law—with its far-flung and undefined range—would invite a flanking movement against the system of State courts by resort to the federal forum with review if need be to this Court, to determine the issue. Asserted unconstitutionality in the impaneling and selection of the grand and petit juries, in the failure to appoint counsel, in the admission of a confession, in the creation of an unfair trial atmosphere, in the misconduct of the trial court— all would provide ready opportunities, which conscientious counsel might be bound to employ, to subvert the orderly, effective prosecution of local crime in local courts. To suggest these difficulties is to recognize their solution." 342 U.S. at 123, 72 S.Ct. at 121–122.

This language was quoted with approval by the Supreme Court in Cleary v. Bolger, 371 U.S. 392, 83 S.Ct. 385, 9 L.Ed.2d 390 (1963), in which the Court held that it was improper to enjoin a state official from presenting certain evidence in a state court criminal prosecution. The court said, "The withholding of injunctive relief against this state official does not deprive respondent of the opportunity for federal correction of any denial of federal constitutional rights in the state proceedings. To the extent that such rights have been violated, cf., e. g., Mapp v. Ohio, supra, he may raise the objection in the state courts and then seek review in this Court of an adverse determination by the New York Court of Appeals. To permit such claims to be litigated collaterally, as is sought here, would in effect frustrate the deep-seated federal policy against piecemeal review." 371 U.S. at 400–401, 83 S.Ct. at 390.

The principles formulated by the jurisprudence through Cleary v. Bolger may be briefly summarized at this point. According to these cases the mere fact that the plaintiff was claiming that his constitutional rights were being violated was not a ground for such an injunction. In addition to such a claim, a plaintiff must show that he would suffer irreparable injury which is clear and imminent. Only such a showing would create the exceptional case or special circumstances in which an injunction should issue. The question of what would constitute irreparable injury had never been answered. Under these cases it is apparent that the danger of a conviction, standing alone, did not constitute irreparable injury because constitutional infirmities in the trial could be reviewed in the various remedies thereafter available to the defendant, such as appeal to the Louisiana Supreme Court, writ of certiorari to the United States Supreme Court, and writs of habeas corpus to state and federal courts.

Then came Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965), in which the Supreme Court found one of the exceptional cases or special circumstances alluded to in the Douglas case. The plaintiffs, the South-

ern Conference Educational Fund, Inc. (SCEF), two of its officers, and an attorney for SCEF, filed suit in a United States District Court, requesting an injunction against imminent prosecutions and threats of such prosecution under the Louisiana Communist Propaganda Control Law and the Louisiana Subversive Activities and Communist Control Law. The complaint alleged that the statutes were unconstitutionally vague and that defendants—the Governor, police and law enforcement officers, and the Chairman of the Legislative Joint Committee on Un-American Activities in Louisiana —had threatened prosecutions in bad faith solely for the purpose of discouraging civil rights activities. The plaintiffs claimed that the threats to enforce these statutes against them were made without any expectation of securing valid convictions, but rather were part of a plan to harass and discourage them and their supporters from asserting the constitutional rights of Negro citizens of Louisiana. Past events convinced the Court that the plaintiffs' freedom of expression had been subjected to a chilling effect. In October, 1963, the two officers of SCEF and SCEF's attorney were arrested by Louisiana state and local police and charged with violations of the two statutes. Their offices were raided and their records and files were seized. Later in October a state judge quashed the arrest warrants as not based on probable cause and discharged the plaintiffs. Subsequently, the state court granted a motion to suppress the seized evidence on the ground that the raid was illegal. Louisiana officials continued, however, to threaten prosecution of the plaintiffs, who thereupon filed suit in a federal district court. A three-judge court was constituted to hear the case. Shortly after the court was convened, a grand jury was summoned in the Parish of Orleans to hear evidence looking to indictments of the plaintiffs. At this point one of the members of the three-judge court issued a temporary restraining order against any further prosecutions, but subsequently a majority of the court dismissed the complaint and dissolved the temporary restraining order. Thereafter the grand jury returned indictments under the Louisiana Subversive Activities and Communist Control Law against the plaintiffs. The Supreme Court was concerned over the adverse effect which these events had upon the operations of SCEF:

"These events, together with repeated announcements by appellee, that the appellant organization is a subversive or Communist-front organization, whose members must register or be prosecuted under the Louisiana statutes, have, appellants allege, frightened off potential members and contributors * * *. Seizures of documents and records have paralyzed operations and threatened exposure of the identity of adherents to a locally unpopular cause * * *. Although the particular seizure has been quashed in the state courts, the continuing threat of prosecution portends further arrests and seizures, some of which may be upheld and all of which will cause the organization inconvenience or worse. * * * Not only does the complaint allege far more than an 'injury other than that incidental to every criminal prosecution brought lawfully and in good faith,' but appellants allege threats to enforce statutory provisions other than those under which indictments have been brought. Since there is no immediate prospect of a final state adjudication as to those other sections—if, indeed, there is any certainty that prosecution of the pending indictments will resolve all constitutional issues presented—a series of state criminal prosecutions will not provide satisfactory resolution of constitutional issues." 380 U.S. at 488–489, 85 S.Ct. at 1122.

In these exceptional circumstances the Court held that a case of "the threat of irreparable injury required by traditional doctrines of equity" was made out, 380 U.S. at 490, 85 S.Ct. at 1123, and it

ruled that "the District Court erred in holding that the complaint fails to allege sufficient irreparable injury to justify equitable relief." 380 U.S. at 489, 85 S.Ct. at 1122. The Court held further that certain sections of the Louisiana Subversive Activities and Communist Control Law were patently unconstitutional on their face and remanded with direction to frame an appropriate injunction restraining prosecution of the indictments obtained under this law.

The most recent Supreme Court case in this area is Cameron v. Johnson, 390 U.S. 611, 88 S.Ct. 1335, 20 L.Ed.2d 182, (1968). The plaintiffs brought an action for declaratory and injunctive relief in the United States District Court. They sought a declaratory judgment decreeing that the Mississippi Anti-Picketing Law was void on its face as an overly broad and vague regulation of expression. They also sought a permanent injunction restraining the defendants—the governor and other Mississippi officials—from enforcing the statute in pending or future criminal prosecutions. They alleged that the pending prosecutions against them for violating the statute were part of a plan of selective enforcement engaged in by defendants with no expectation of securing convictions, but solely to discourage plaintiffs from picketing to protest racial discrimination in voter registration and from encouraging Negro citizens to attempt to register to vote. At the time of the suit there were numerous criminal prosecutions pending against plaintiffs. But the Supreme Court held that the circumstances of this case were not controlled by Dombrowski and upheld the district court's refusal to grant the injunction. Here, unlike Dombrowski, the state statute was held to be a valid law. Furthermore, the Court found that the Mississippi officials had not enforced it against the plaintiffs in bad faith to harass their exercise of protected expression and without any intention of pressing the charges or any expectation of ob-

taining convictions. Rather, the Court held that the officials had in good faith regarded the plaintiffs' conduct as violating the statute.

We now summarize the effect of Dombrowski and Cameron on the earlier jurisprudence. In Dombrowski the Court carved out one of the special circumstances or exceptional cases under which a federal injunction may issue, when it held that under the peculiar circumstances of that case there was an exception to the general policy against federal injunctions of state court proceedings. This may be called the "chilling effect" exception, because the irreparable injury in that case was the chilling effect on the First Amendment rights of the plaintiffs in the Dombrowski case, which was caused by the defendants' threat of repeated raids on SCEF's headquarters and arrest and prosecution of SCEF's officials. But the fact that a constitutional right has allegedly been infringed, standing alone, is not enough to come within the chilling effect doctrine. For the Court in the Dombrowski case said, "It is generally to be assumed that state courts and prosecutors will observe constitutional limitations as expounded by this Court, and that the mere possibility of erroneous initial application of constitutional standards will usually not amount to the irreparable injury necessary to justify a disruption of orderly state proceedings." 380 U.S. 479, 484–485, 85 S.Ct. 1116, 1120. Rather, in order to come within this exception the plaintiff must show that the prosecution has been brought against him, not because the defendants in good faith believe that he has violated Louisiana's conspiracy statute, but in bad faith, knowing that he did not commit the crime of conspiracy, in order to harass the plaintiff in the exercise of his First Amendment rights without any expectation of obtaining a valid conviction. It is not enough for the plaintiff to allege that he is innocent of state charges in order to obtain injunctive relief, As the Su-

preme Court said in Cameron v. Johnson, supra, 88 S.Ct. at 1341:

> "[T]he question for the District Court was not the guilt or innocence of the persons charged, the question was whether the statute was enforced against them with no expectation of convictions but only to discourage exercise of protected rights. The mere possibility of erroneous application of the statute does not amount 'to the irreparable injury necessary to justify a disruption of orderly state proceedings.' Dombrowski v. Pfister, supra, 380 U.S. at 485, 85 S.Ct. at 1120. The issue of guilt or innocence is for the state court at the criminal trial; the State was not required to prove appellants guilty in the federal proceedings to escape the finding that the State had no expectation of securing valid convictions."

Turning now to the case before us, there can be no question that the plaintiff has alleged that he is the victim of a prosecution conducted in bad faith. In his complaint he alleges that the defendants "have not acted in good faith, but to the contrary, they have charged plaintiff and caused him to be indicted solely and only for the purpose of using him as a vehicle to the forum which they sought for their attacks on the Warren Report. He is a 'patsy' or a 'pawn' in the hands of the defendants, being used by them in furtherance of their false and fraudulent investigation of the Kennedy assassination." Surely, it cannot be doubted that these allegations, if proved, would establish that the plaintiff is being prosecuted in bad faith. If the plaintiff's contentions are true, the defendants' conduct in this case would constitute serious bad faith.

But under *Dombrowski* and *Cameron* the plaintiff, in order to obtain injunctive relief must also show that his First Amendment rights are being violated. In Cameron v. Johnson, supra, Justice Fortas dissented and thought that the prosecutions should have been enjoined. Nevertheless, he did not contend that an injunction should issue

under *Dombrowski* in the absence of First Amendment violations, but on the contrary, said *"Dombrowski's* remedy is justified *only* when First Amendment rights, which are basic to our freedom, are imperiled by calculated, deliberate state assault." 88 S.Ct. 1335, 1342. (Emphasis added.) The plaintiff does allege that his First Amendment rights are being infringed in the following manner: he has been prohibited from leaving the jurisdiction; he has been under surveillance by the defendants and their agents; he has received threats to his life; his business and social activities, his attendance at public functions, and his appearances in public life generally have been restricted; his neighbors and friends have been subjected to interrogation, surveillance, and harassment; the defendant Garrison has made public and private statements that the plaintiff would either commit suicide or be killed prior to trial; the plaintiff fears arrest and/or entrapment; the defendant Garrison has made repeated public and private statements that there is no way that the plaintiff can be acquitted; the telephone of plaintiff and his associates has been tapped; there has been electronic intrusion into plaintiff's home; there has been repeated public speculation, as well as statements by the defendants and others, about his private life, conduct and habits; the plaintiff has been held up to ridicule by the defendants and the public at large because of the groundless charge brought against him; he has been made the subject of undue and extensive surveillance and investigation of his private life by parties unknown to him, as a result of which he alleges that his right of freedom of expression, thoughts and actions has been obliterated; he fears for his safety and has to accept police protection when making court appearances; he is unable to obtain gainful employment; his attorneys have been subjected to publicized vitriolic attacks by defendants; and the plaintiff fears to occupy his homestead.

Some of the matters alleged, such as the prohibition from leaving the

jurisdiction and the restriction of plaintiff's business and social activities, are merely part of the "injury incidental to every proceeding brought lawfully and in good faith," Cameron v. Johnson, supra, 88 S.Ct. at 1339. However, even though all of these allegations, if proved, would show that the plaintiff has suffered injury and injustice because of the prosecution, a plaintiff seeking *Dombrowski* relief must also show that the bad faith prosecution has been brought for the purpose of continuing harassment in order to discourage him in the exercise of his First Amendment rights. Here the plaintiff contends that the defendants' "actions are part of a plan to employ illegal searches and seizures and threats of prosecution under color of the statute to harass plaintiff, and to discourage others of his class, from asserting his rights to free speech and assembly, as guaranteed to him by the First Amendment to the Constitution of the United States." Plaintiff discusses his claim in more detail when he refers to "defendants' plan to employ arrests, seizures and threats of prosecution, under color of various Louisiana statutes, including but not limited to LRS 14:26; to harass any and all individual citizens who disagree with their theories as to the assassination of President Kennedy, how the assassination came about, who participated in the assassination, the political consequences of the death of the President, the integrity of the investigating officers, and the integrity of the members of the Warren Commission." There is no suggestion by plaintiff that the prosecution has the effect of continuous harassment in the exercise by him of protected expression in the *Dombrowski* context. His right of such expression has not been impaired. During the oral hearing on this motion, counsel for plaintiff informed the Court that the plaintiff has never publicly taken a stand either for or against the Warren Report, nor has he made any public statements about his theories on the assassination of President Kennedy. It is clear that the prose-

cution was not instituted for the purpose of discouraging the plaintiff in the exercise of his First Amendment rights. Accordingly, we hold that plaintiff has failed to bring his case within the ambit of the *Dombrowski* decision.

 Plaintiff also alleges that the defendants "are not motivated by any expectation of obtaining a valid conviction * * *." But in several parts of his complaint plaintiff indicates that he fears that he may be convicted. In Paragraph 41 he states that should he be convicted, he will suffer irreparable injury from the publicity which will attend such a conviction. In Paragraph 51 of his complaint he states that he "will have his liberty placed in jeopardy by standing trial" in the state court. In Paragraph 58 he states that he will suffer irreparable injury "in the event of his conviction * * *." And in Paragraph 59 he notes the possibility of being incarcerated without bail pending appeal from a conviction. All of the actions which the defendants have taken, since they obtained a ruling at the close of the preliminary hearing that there was probable cause to justify continuing the prosecution against the plaintiff, indicate that they are striving for a conviction. It should be noted in this respect that this case had been set for trial by the defendants on June 11, 1968, before a temporary restraining order was granted against further prosecution of this case.

 Nor do we believe that the plaintiff's alleged injury is irreparable. An acquittal in the state court would end the alleged injury. And our holding that an injunction shall not issue does not preclude the plaintiff from ultimate federal review of the state court proceedings and relief from any unjust consequences which he may suffer during such proceedings. Review of the plaintiff's trial may be obtained by appeal to the Louisiana Supreme Court, writ of certiorari to the United States Supreme Court, and by writs of habeas corpus to the state and federal courts.

Furthermore, the plaintiff may well be acquitted at the trial.

In City of Greenwood, Miss. v. Peacock, 384 U.S. 808, 86 S.Ct. 1800, 16 L. Ed.2d 944 (1966), the Supreme Court held that a state criminal prosecution could not be removed from state court to federal court, even though the defendants claimed that "they are being prosecuted on baseless charges solely because of their race * * *." The Court was of the opinion that if these allegations were true, "there has been an outrageous denial of their federal rights," but added that "the federal courts are far from powerless to redress the wrongs done to them." 384 U.S. at 828, 86 S. Ct. at 1813. The Supreme Court said that "there are many other remedies available in the federal courts to redress the wrongs claimed by the individual petitioners in the extraordinary circumstances they allege in their removal petitions." 384 U.S. at 829, 86 S. Ct. at 1813. The Court further said:

"If they go to trial and there is a complete absence of evidence against them, their convictions will be set aside because of a denial of due process of law. Thompson v. City of Louisville, 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654. If at their trial they are in fact denied any federal constitutional rights, and these denials go uncorrected by other courts of the State, the remedy of federal habeas corpus is freely available to them. Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed. 837. If their federal claims at trial have been denied through an unfair or deficient fact-finding process, that, too, can be corrected by a federal court. Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770.

"Other sanctions, civil and criminal, are available in the federal courts against officers of a State who violate the petitioners' federal constitutional and statutory rights. Under 42 U.S.C. § 1983 (1964 ed.) the officers may be made to respond in damages not only for violations of rights conferred by federal equal civil rights laws, but for violations of other federal constitutional and statutory rights as well. Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492." 384 U.S. at 829–830, 86 S.Ct. at 1813–1814.

We believe that the Supreme Court's reasoning concerning removal in the *Peacock* case is equally applicable here and that plaintiff will have ample opportunity to obtain ultimate federal relief from any injuries he may suffer as a result of the possible deprivation of his constitutional rights in the state court prosecution, should he fail to achieve vindication of his rights in the state court proceedings.[19]

Summary judgment is appropriate here without an evidentiary hearing because the pleadings and exhibits adequately set forth the details and facts of plaintiff's case. Counsel for plaintiff has followed the Louisiana practice of articulating all of the facts in his verified pleadings, as is required by Article 854 of the Louisiana Code of Civil Procedure,[20] and therefore, we are apprised of the nature of plaintiff's case in ultimate detail. The complaint as amended consists of 58 pages and 125 allegations. We have been informed by counsel for plaintiff that they would use every witness in this case that they

19. Plaintiff's counsel in brief p. 42 erroneously states that the present case has been removed from the state court and therefore there are no presently pending state proceedings which would bar an injunction under § 2283. This is probably an inadvertence by counsel since it is quite clear there has been no removal of the state proceedings to the federal court.

20. "Art 854. *Form of pleading*
No technical forms of pleading are required.
All allegations of fact of the petition, exceptions, or answer shall be simple, concise, and direct, and shall be set forth in numbered paragraphs. As far as practicable, the contents of each paragraph shall be limited to a single set of circumstances."

would call in the state court trial. We have accepted all well pleaded facts as true, but we have nevertheless concluded that plaintiff is not entitled to injunctive relief under *Dombrowski* and *Cameron*.

■■■ Plaintiff also contends that 28 U.S.C. § 2283 does not bar injunctive relief which he seeks under 42 U.S.C. § 1983.[21] He argues that § 1983 is an exception to the provisions of § 2283 which forbids a United States Court to grant an injunction to stay state court proceedings "except as expressly authorized by Act of Congress * * *." But we need not pass on this question in view of our holding above that the injury that plaintiff has alleged is not irreparable. The Supreme Court has not yet found it necessary to pass on this matter.[22] But it is apparent from an examination of some of the cases dealing with the question of federal injunctions of state court prosecutions that even if we found that § 1983 is an expressly authorized exception to § 2283, we should not grant injunctive relief in the absence of exceptional circumstances showing irreparable injury without which federal courts have been reluctant to enjoin state court prosecutions. One

writer has commented that the question of whether § 1983 is an exception to § 2283 is "largely academic" because even "where the anti-injunction statute does not apply, federal courts have been reluctant to interfere in state matters in the area of civil rights except in extraordinary circumstances."[23]

In this context it should be pointed out that in Douglas v. City of Jeannette, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324 (1943), the Supreme Court held that the plaintiffs had successfully invoked jurisdiction under the predecessor statutory provision to § 1983. Nevertheless, it refused to grant an injunction in the absence of extraordinary circumstances. In Stefanelli v. Minard, 342 U.S. 117, 230, 72 S.Ct. 118, 120, 96 L.Ed. 138 (1951), the Supreme Court warned that:

"* * * even if the power to grant the relief here sought may fairly and constitutionally be derived from the generality of language of the Civil Rights Act [which question the Court refrained from deciding], to sustain the claim would disregard the power of courts of equity to exercise discretion when, in a matter of equity jurisdiction, the balance is against the wisdom of using their power. Here,

21. "42 U.S.C. § 1983 *Civil action for deprivation of rights*

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. R.S. § 1979."

22. See Dombrowski v. Pfister, supra, at 380 U.S. 484, 85 S.Ct. 119–120, footnote 2, and Cameron v. Johnson, supra, at 88 S.Ct. 1337, footnote 3. But there are several federal cases in which this point has been considered. The Third Circuit held that § 1983 does constitute an exception to § 2283 in Cooper v. Hutchinson, 184 F.2d 119 (3rd Cir., 1950), and this case was followed by a district court in the same circuit in Tribune Review Publishing Company v. Thomas, 153 F.

Supp. 486 (W.D.Pa., 1957). Cases in which it was held that § 1983 does not constitute an exception to § 2283 are Baines v. City of Danville, 337 F.2d 579 (4th Cir., 1964), cert. den. Chase v. McClain, 381 U.S. 939, 85 S.Ct. 1772, 14 L.Ed.2d 702 (1965); Smith v. Village of Lansing, 241 F.2d 856 (7th Cir., 1957); Goss v. State of Illinois, 312 F.2d 257 (7th Cir., 1963); Sexton v. Barry, 233 F.2d 220 (6th Cir., 1956), cert. den. 352 U.S. 870, 77 S.Ct. 94, 1 L.Ed.2d 76 (1956); Brooks v. Briley, 274 F.Supp. 538 (M.D.Tenn., 1967), aff'd, 391 U.S. 361, 88 S.Ct. 1671, 20 L.Ed.2d 647 (1968); Sheridan v. Garrison, 273 F. Supp. 673 (E.D.La., 1967); and Cameron v. Johnson, 262 F.Supp. 873 (S.D. Miss., 1966), aff'd on other grounds, 390 U.S. 611, 88 S.Ct. 1335, 20 L.Ed.2d 182 (1968).

23. Note, Incompatibility—The Touchstone of Section 2283's Express Authorization Exception, 50 Va.L.Rev. 1404, 1427–1428 (1964).

the considerations governing that discretion touch perhaps the most sensitive source of friction between States and Nation, namely, the active intrusion of the federal courts in the administration of the criminal law for the prosecution of crimes solely within the power of the States."

In Cooper v. Hutchinson, 184 F.2d 119 (3rd Cir., 1950) the Third Circuit Court of Appeals would not grant injunctive relief in spite of the fact that it held that § 1983 is an expressly authorized exception to § 2283. In denying injunctive relief it said:

"Nevertheless, this is a suit in equity. The giving of the peculiarly characteristic remedies available in equity lie in a chancellor's discretion, subject, of course, to review. We think a chancellor's discretion in this case requires a withholding of his arm from interfering at a preliminary stage in state litigation, at least until it has become apparent that state procedure cannot avert irreparable harm to these appellants. The Supreme Court has warned us constantly about interfering in the delicate matter of the balance between state and national authority. The 'arrest by the federal courts of the processes of the criminal law within the states * * * [is] to be supported only on a showing of danger of irreparable injury "both great and immediate." ' Douglas v. City of Jeannette * * *" 184 F.2d at 124.

Therefore we have concluded that it is unnecessary to make a definitive finding on the difficult legal question as to whether § 1983 is an exception to § 2283 under the circumstances here presented.

IV.

Plaintiff also seeks a declaratory judgment decreeing that LSA–R.S. 14:26, the Louisiana conspiracy statute under which he is being prosecuted, is unconstitutional. He also seeks a declaration of the unconstitutionality of the following Louisiana provisions: Articles 402, 403, 409, and 413 of the Louisiana Code of Criminal Procedure, and Article VII, Section 41, of the Louisiana Constitution of 1921, which provisions are concerned with qualifications and manner of selection of jurors; Articles 433 and 434 of the Code of Criminal Procedure, concerning grand jury proceedings; Articles 484 and 485 of the Code of Criminal Procedure, dealing with bills of particulars; Articles 627 and 912 of the same Code, which deny a defendant the right to appeal from the denial of a motion for change of venue; and Article 782 of the Code of Criminal Procedure, which provides that cases in which the punishment is necessarily at hard labor shall be tried by a jury composed of twelve jurors, nine of whom must concur to render a verdict.[24] Of the preceding provisions being challenged here, only three, namely, Articles 402 and 409 of the Code of Criminal Procedure, and Article VII, Section 41, of the Louisiana Constitution of 1921, were challenged in the state court proceedings. It is a curious circumstance that the constitutionality of the conspiracy statute under which the plaintiff was indicted and is being prosecuted has not been questioned by the plaintiff in the state court. Therefore, it is before us for initial consideration of its constitutionality.

Plaintiff relies principally upon the decision of Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967), in asserting that he is entitled to independent consideration of this portion of the complaint, regardless of our determination as to the merits of his request for injunctive relief.

Zwickler v. Koota involved the abstention doctrine, under which a federal court may abstain from determining the constitutionality of a state statute when that provision is subject to an interpretation by a court of that state which would cure it of any alleged infirmities and thereby

---

24. The full text of these provisions is set forth in Notes 1–13, supra.

erase the constitutional challenge.[25] In the *Zwickler* case a New York statute made it a crime to distribute in quantity certain types of political handbills for another person without printing on the handbills the name and address of the person for whom the handbills were being distributed. The plaintiff had been prosecuted under this statute, but his conviction was reversed in the state court on state law grounds. Subsequently, even though no state prosecution was pending and none was actually threatened (the plaintiff assumed, without offering any evidence to that effect, that the defendant intended to prosecute him if he distributed anonymous handbills in the future),[26] plaintiff brought suit in federal court seeking a declaratory judgment that the statute was unconstitutional on its face as an infringement upon free expression, and an injunction prohibiting future prosecution of the plaintiff under that statute. Plaintiff contended that the statute was void because of "overbreadth" in that its sweep embraced anonymous handbills both within and outside the protection of the First Amendment. But a three-judge federal district court applied the doctrine of abstention and dismissed the suit. The Supreme Court reversed and held that the doctrine of abstention could not properly be invoked. The district court had thought that this statute was susceptible to a construction by the state courts which would avoid the constitutional question. But the Supreme Court found that such a construction was impossible in this case, saying, "Appellee does not contest appellant's suggestion that §

781–b [the New York statute in question] is both clear and precise; indeed, appellee concedes that state court construction cannot narrow its allegedly indiscriminate cast and render unnecessary a decision of appellant's constitutional challenge." 88 S.Ct. 391, 396–397. The Court then stated the general rule applicable to the doctrine of abstention:

> " ' * * * Though never interpreted by a state court, if a state statute is not fairly subject to an interpretation which will avoid or modify the federal constitutional question, it is the duty of a federal court to decide the federal question when presented to it. * * * ' " Id. at 397.

The district court also thought that the special circumstances necessary for an injunction to issue under the holding in Douglas v. City of Jeannette, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324 (1943), should be present if the declaratory judgment was to be rendered. But the Supreme Court held that this, too, was error and said that "a federal district court has the duty to decide the appropriateness and the merits of the declaratory request irrespective of its conclusion as to the propriety of the issuance of the injunction." Id. at 391.

 However, despite the language of *Zwickler*, we entertain serious doubts about the appropriateness of stopping a pending state court prosecution to consider a request of plaintiff for a declaratory judgment as to the constitutionality of R.S. 14:26, the conspiracy statute under which he is being prosecuted. Although *Zwickler* stated that the doctrine

---

**25.** The doctrine of abstention was first promulgated by the Supreme Court in Railroad Commission of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). In that case the Court stated that if a federal district court passes on the constitutionality of a statute which is subject to a construction by a state court which would remove the alleged constitutional infirmities, "no matter how seasoned the judgment of the district court may be, it cannot escape being a forecast rather than a determination." 312 U.S. at 499, 61 S.Ct. at 645.

**26.** In Zwickler v. Koota, 261 F.Supp. 985, 988 (E.D.N.Y., 1966), the three-judge district court stated that the plaintiff "presumes to read Mr. Koota's mind by alleging that Mr. Koota 'pursuant to his duties intends or will again prosecute the plaintiff for his [intended] acts of distribution' of anonymous political literature. He regards this presumption as 'the threat of prosecution' which places him 'in fear of exercising his right to make distribution as aforesaid' and which places him 'in fear of again being prosecuted therefor.' "

of abstention could not be invoked in the circumstances of that case, it did not nullify the well-settled rule that the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, is discretionary, rather than mandatory, and declaratory relief may be withheld by the district court in its discretion in appropriate cases.[27] This principle was stated by the Supreme Court in Public Affairs Associates, Inc. v. Rickover, 369 U.S. 111, 112, 82 S.Ct. 580, 582, 7 L.Ed.2d 604 (1962):

"The Declaratory Judgment Act was an authorization, not a command. It gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so. [citing cases] Of course a District Court cannot decline to entertain such an action as a matter of whim or personal disinclination. 'A declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest.' Eccles v. Peoples Bank, 333 U.S. 426, 431, 68 S.Ct. 641, 644, 92 L.Ed. 784. We have cautioned against declaratory judgments on issues of public moment, even falling short of constitutionality, in speculative situations. Eccles v. Peoples Bank, supra, at 432, 68 S.Ct. at 644." [28]

Our doubt about the propriety of giving consideration to the request for declaratory relief in the circumstances of this case is based upon our concern that by permitting a defendant to interrupt a state court prosecution to challenge the statute under which he is being prosecuted, we could open the door to constant disruption of state court criminal proceedings. Ingenious counsel for a defendant in a state criminal prosecution would not find it difficult to phrase his defense in terms of constitutionality so as to make it possible to bring a suit for declaratory relief in a federal district court during the pendency of a state court prosecution. This might well do violence to the strong federal policy of comity as expressed by the Supreme Court in Stefanelli v. Minard, 342 U.S. 117, 72 S.Ct. 118, 96 L.Ed. 138 (1951) and Cleary v. Bolger, 371 U.S. 392, 83 S. Ct. 385, 9 L.Ed.2d 390 (1963).[29]

27. See Malone v. Emmet, 278 F.Supp. 193, 200 (M.D.Ala., 1967), in which the court declined to grant a declaratory judgment as to the constitutionality of a state criminal procedure statute, even though declaratory relief was coupled with a request for an injunction of a pending prosecution and Zwickler had been decided by the Supreme Court three weeks previously. The court relied upon the discretionary nature of declaratory relief in coming to its decision.

28. In Abbott Laboratories v. Gradner, 387 U.S. 136, 155, 87 S.Ct. 1507, 1519, 18 L. Ed.2d 681 (1967), the Supreme Court said, "A court may even in its discretion dismiss a declaratory judgment or injunctive suit if the same issue is pending in litigation elsewhere." Generally, a court may, in its discretion, refuse to grant a declaratory judgment if the issues raised may be fully adjudicated in a suit pending in a state court at the time the federal declaratory judgment action was instituted. 1A Moore's Federal Practice ¶0.220 at p. 2603.

29. A somewhat comparable situation is found in the efforts of convicted state prisoners to seek declaratory relief in the federal courts. The rule is well established in several circuits that a defendant convicted of a crime should not be permitted to utilize the declaratory judgment procedure as a weapon with which to dispense with the requirement that he exhaust his state remedies before coming into federal court or as a substitute for appeal or habeas corpus. A good statement of this general rule was given by the Eighth Circuit Court of Appeals in Waldon v. State of Iowa, 323 F.2d 852, 853 (8th Cir., 1963):
"A state prisoner is not entitled to seek a declaratory determination from the federal courts under 28 U.S.C.A. § 2201 as to the validity of the judgment on which he is confined. If the restraint in which he is held is constitutionally invalid, the federal courts have the power to release him therefrom in habeas corpus, after exhaustion by him of such state remedies as are available to him. He cannot resort to a federal declaratory judgment suit in an effort to escape having to exhaust available state remedies and to circumvent the intent manifested by Congress in 28 U.S.C.A. § 2254 that the state

956

■ Another reason which causes us to doubt whether declaratory relief should be entertained here is the fact that there are certain differences between the circumstances in *Zwickler* and those in the case before us. In *Zwickler* there was no pending prosecution and no evidence of a real threat of future prosecution. Furthermore, *Zwickler* was concerned with a substantial attack on a statute which on its face allegedly violated First Amendment rights because of its restraints upon anonymous handbills.[30] In this regard the Supreme Court said in *Zwickler:*

> "These principles have particular significance when, as in this case, the attack upon the statute on its face is for repugnancy to the First Amendment. In such case to force the plaintiff who has commenced a federal action to suffer the delay of state court proceedings might itself effect the impermissible chilling of the very constitutional right he seeks to protect." 88 S.Ct. at 397–398.

However, we do not believe that the conspiracy statute can be the object of a valid or substantial attack on First Amendment grounds.

Nevertheless, despite our serious misgivings about considering the request for declaratory relief, we have concluded

to rule on the constitutionality of the conspiracy statute. LSA–R.S. 14:26, the Louisiana conspiracy statute, provides:

> "Criminal conspiracy is the agreement or combination of two or more persons for the specific purpose of committing any crime: provided that an agreement or combination to commit a crime shall not amount to a criminal conspiracy unless, in addition to such agreement or combination, one or more of such parties does an act in furtherance of the object of the agreement or combination.

> "Where the intended basic crime has been consummated the conspirators may be tried for either the conspiracy or the completed offense, and a conviction for one shall not bar a prosecution for the other.

> "Whoever is a party to a criminal conspiracy to commit a crime punishable by death or life imprisonment, shall be imprisoned at hard labor for not less than one nor more than twenty years.

> "Whoever is a party to a criminal conspiracy to commit the crime of theft or of receiving stolen things shall be fined not more than two hundred dollars, or imprisoned for not more than one year, or both.

> "Whoever is a party to a criminal conspiracy to commit any other crime

---

courts are to be given 'the opportunity to pass upon and correct errors of federal law in the state prisoner's conviction', Fay v. Noia, 372 U.S. 391, 438, 83 S.Ct. 822, 848, 9 L.Ed.2d 837."

In Forsythe v. State of Ohio, 333 F.2d 678, 679 (6th Cir., 1964), the Sixth Circuit Court of Appeals stated, "We are satisfied that the Declaratory Judgment Act, 28 U.S.C.A. § 2201, cannot be used as a substitute for appeal, habeas corpus, coram nobis or other procedures enjoying currency among the many now seeking release from prison." Other recent cases holding that the federal district court may refuse to grant declaratory relief to review convictions before state remedies have been exhausted are Benson v. State Board of Parole & Probation, 384 F.2d 238 (9th Cir., 1967); Booker v. State of Arkansas, 380 F.2d 240 (8th Cir.,

1967); Scruggs v. Henderson, 380 F.2d 981 (6th Cir., 1967); United States ex rel Bennett v. People of the State of Illinois, 356 F.2d 878, 879 (7th Cir., 1966), cert. den. 384 U.S. 946, 86 S.Ct. 1472, 16 L.Ed.2d 544 (1966); and Shannon v. Sequeechi, 365 F.2d 827 (10th Cir., 1966), cert. den. 386 U.S. 481, 87 S.Ct. 1175, 18 L.Ed.2d 225 (1967), reh. den., 386 U.S. 1014, 87 S.Ct. 1354, 18 L.Ed.2d 452 (1967).

30. In Malone v. Emmet, 278 F.Supp. 193, 200 (M.D.Ala., 1967), the court said, "[A]s the Court in *Zwickler* was careful to observe, the asserted constitutional act was the First Amendment guarantee of free speech. The Supreme Court in *Zwickler* * * * places free speech and other First Amendment rights in a special category."

shall be fined or imprisoned, or both, in the same manner as for the offense contemplated by the conspirators; but such fine or imprisonment shall not exceed one-half of the largest fine, or one-half the longest term of imprisonment prescribed for such offense, or both."

This statute is not unique. In fact, it is merely a restatement of the common-law crime of conspiracy. It is similar to the federal conspiracy statute, 18 U.S.C. § 371, which provides in part:

"If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both."

Basically, there is very little to distinguish between these two statutes. Both require a conspiracy between two or more people to commit a crime and both further provide that one of the parties to the conspiracy must do an act to effect, or in furtherance of, the object of the conspiracy.

As the Supreme Court pointed out in Scales v. United States, 367 U.S. 203, 225, 81 S.Ct. 1469, 1484, 6 L.Ed.2d 782 (1961), the concept of conspiracy "manifest[s] the more general principle that society, having the power to punish dangerous behavior, cannot be powerless against those who work to bring about that behavior." See also Johnson v. Lee, 281 F.Supp. 650, 655 (D.Conn., 1968).

One of the plaintiff's contentions is that the word "crime" in the Louisiana conspiracy statute (a part of the Louisiana Criminal Code) is not defined. But LSA–R.S. 14:7, also a part of the Louisiana Criminal Code, states "a crime is that conduct which is defined as criminal in this Code, or in other acts of the legislature, or in the constitution of this state." The Reporter's Comment to 14:7 states that the Louisiana criminal law is purely statutory and that there are no other crimes than those defined in the Code or other statutes of this State.[31] We see no constitutional infirmity in defining "crime" in this manner. In fact, a definition of this sort is much more precise than a general definition, since there can be no crime which is not found in Louisiana's statutory law.

The plaintiff also contends that 14:26 is violative of the First Amendment to the United States Constitution because it punishes a person for merely expressing his thoughts about committing a crime. However, the statute does not punish a person for saying he would like to commit a crime, but only for entering into an "agreement or combination" with one or more other persons to commit a crime. Such an agreement is much more than the mere expression of one's thoughts; it is conduct which leads directly to criminal consequences and against which society has the right to protect itself. We are of the opinion, therefore, that plaintiff has demonstrated no constitutional invalidity to the Louisiana conspiracy statute.

---

**31.** It is well settled under the Louisiana jurisprudence that "[W]e have in this state no common-law crimes. Nothing is a crime which is not made so by express statute," State v. Robinson, 143 La. 543, 78 So. 933, 937 (1918). "[I]t is well-settled that no act or conduct, however reprehensible, is a crime in Louisiana unless it is defined and made a crime clearly and unmistakably by statute." State v. Sanford, 203 La. 961, 14 So.2d 778, 781 (1943). In State v. Arkansas Louisiana Gas Company, 227 La. 179, 78 So.2d 825, 827 (1955), the Supreme Court of Louisiana said, "It is so axiomatic, that citation of authority is unnecessary, that in Louisiana there are no common-law crimes, and that nothing is a crime, no conduct can be held criminal, which is not made so by statute and clearly described by the language of its prohibition."

We believe that it is obviously improper to rule on the constitutionality of the numerous procedural statutes challenged by the plaintiff. The plaintiff is not being prosecuted under these statutes so *Zwickler* is inapplicable. Furthermore, what we have already said about the federal policy against the needless disruption of orderly state court criminal proceedings applies even more forcefully. The constitutionality of these statutes may properly be ruled upon by the state court, and it should again be noted that of the twelve provisions which the plaintiff is challenging on constitutional grounds in this proceeding, he has questioned the validity of only three of these laws in the state court proceeding.

Nor should we grant a declaratory judgment decreeing that the Warren Report is binding upon all courts of the United States, including the Louisiana State Court in which the prosecution is pending. The same applies to the request that we order the defendant to furnish certain documents to plaintiff. No authority has been cited nor have we found any that would authorize this relief as to these requests.[32]

Our adverse ruling to plaintiff should not be construed as an intimation of any view whatsoever on the merits of the pending criminal charge against him. As a matter of law, plaintiff Shaw's request for relief in the federal court is premature, for under our system of federalism in the circumstances presented here, he must first seek vindication of his rights in the state courts as to this pending prosecution.

The motion to dismiss, which we have considered as a motion for summary judgment, is granted and the plaintiff's suit is dismissed.

HEEBE, District Judge, concurs.

---

32. The plaintiff has also moved to compel some of the defendants to answer certain questions asked them in the course of depositions, and the defendants have moved to have all of the defendants ex-cept Jim Garrison dropped from these proceedings. However, it is not necessary to rule on these motions since they have become moot by virtue of our rulings on the other issues in this case.