Kendall L. VICK and Mark A. Young, a Minor, Represented by his Mother and Next Friend, Marjorie Mae Sylvester, Plaintiffs,

v.

Victor H. SCHIRO, Mayor of the City of New Orleans, Alvin J. Liska, City Attorney for the City of New Orleans, and Joseph I. Giarrusso, Superintendent of Police for the City of New Orleans, Defendants.

Civ. A. No. 68-1206.

United States District Court
E. D. Louisiana,
New Orleans Division.

Jan. 24, 1969.

**174**

Benjamin E. Smith, Smith, Scheuermann & Jones, Kendall L. Vick, New Orleans, La., for plaintiffs.

Ernest L. Salatich, Richard Seither, Asst. City Attys., Alvin J. Liska, City Atty., for defendants.

CASSIBRY, District Judge:

This is an allegedly class action brought by the plaintiffs pursuant to Rule 23 of the Federal Rules of Civil Procedure in which they seek declaratory and injunctive relief and damages against certain officials of the City of New Orleans, Louisiana. The plaintiffs have presently pending against them in the Municipal Court of the City of New Orleans prosecutions under various municipal ordinances and they request the court to strike down and enjoin the enforcement of these ordinances and others for alleged vagueness and overbreadth and for invalidity as applied to plaintiffs and others similarly situated.

The plaintiffs are Kendall L. Vick, an attorney, and Mark A. Young, a newspaper vendor, whose arrests by members of the New Orleans Police Department arose out of an incident on June 9, 1968 in that City in Jackson Square, a small one-block park in the Vieux Carre. The defendants are Victor H. Schiro, Alvin J. Liska, and Joseph I. Giarrusso, Mayor, City Attorney, and Superintendent of Police, respectively, for the City of New Orleans.

Plaintiffs allege essentially in their complaint filed on June 19, 1968 that municipal ordinances 828 MCS 49–6 (Obstruction of police)[1] and 42–22 (Disturbance by intoxication or otherwise)[2] are facially unconstitutional on account of vagueness in violation of the First and Fourteenth Amendments and 828 MCS 46–1 (Permits required for various callings or occasions)[3] is unconstitutional as applied for overbreadth because the City of New Orleans purports to encompass within its scope activity which is clearly protected by federal guarantees of free press, free speech, assembly and petition in violation of the First and Fourteenth Amendments, and that all three of these ordinances are susceptible of sweeping and improper application. They charge that the defendants have acted and threaten to continue to act under the color of these ordinances to deprive plaintiffs and the classes they represent (in particular Negroes, persons of poor financial condition, and persons unorthodox in dress and habit) of rights, privileges and immunities secured to them by the Constitution and laws of the United States, and to harass and intimidate them, all in violation of the First and

1. "It shall be unlawful and shall be considered a breach of the peace for any person wilfully to obstruct, hinder or unlawfully interfere with any member of the city police while in the performance of his duty."

2. "No person shall make a violent noise or create a disturbance or offense against the public peace by intoxication or otherwise."

3. "Every person who shall desire to use the public streets, sidewalks or public places or private places or business establishments for the conduct of any of the business or callings hereinafter set forth or to hold meetings or rallies or public entertainments in private or public halls or places shall first apply to and obtain from the Department of Finance a permit. Such permit shall in each instance state the occasion for which it is issued and the date upon which it will expire. Such permits shall be paid for by the applicant at the time of issuance according to the following schedule :"

(Thirty-nine categories are delineated, none of which specifically mention newspaper vending.)

Fourteenth Amendments. They charge also that the defendants under color of these same ordinances have also entered into a plan or conspiracy with other persons to the plaintiffs presently unknown to deprive them of their constitutional rights and to harass and intimidate them, and the mere existence and continued use by defendants of these ordinances create a chilling effect on the exercise of First Amendment rights.

The jurisdiction of this Court is invoked pursuant to Title 28 U.S.C. §§ 1331, 1343, Title 42 U.S.C. §§ 1981, 1983, 1985, 1988 and Title 28 U.S.C. §§ 2201, 2202.

The plaintiffs moved for a temporary restraining order requiring the defendants to stay the prosecutions of the plaintiffs pending a determination of plaintiffs' motion for a preliminary injunction and this was denied. The City Attorney has voluntarily held the prosecutions in abeyance during my determination of plaintiffs' right to injunctive relief and they are presently pending in the Municipal Court of New Orleans.

The defendants filed opposition to the motion for preliminary injunction on the ground that it fails to state a claim upon which relief can be granted and answered the complaint denying that they were acting to deprive plaintiffs of rights secured to them under the Constitution of the United States, or to harass and intimidate them in the exercise of their constitutional rights or that they were conspiring to deprive plaintiffs of their constitutional rights.

On July 10, 1968, the day set for hearing the motion for preliminary injunction, plaintiffs filed an amended complaint alleging that Robert Edward Northcutt, a citizen of the State of California was arrested on July 6, 1968 under circumstances similar to those in the arrest of Mark Young and charged with violating 828 MCS 45–1 (Permit required for peddling),[4] which charge was subsequently dismissed, and was threatened with future charges for violation of 828 MCS 43–47 (Prohibiting peddlers, bootblacks, etc. in or around squares or parks).[5] They prayed that these two ordinances be included with those they sought relief from in the original complaint.

The court held a hearing to determine the validity of the charges in the complaint that the defendants' actions under the ordinances were in bad faith for the purpose of discouraging protected activities, and that the arrests had a "chilling effect" on the exercise by plaintiffs of their rights under the First Amendment to the Constitution of the United States. At the hearing the following facts were shown:

On June 9 Mark Young, 19 years old, obtained copies of the newspaper Nola Express from a shop on Decatur Street and proceeded to Jackson Square to sell them and other papers. The Nola Express, a political publication, had been published for about three months. At one time 1500 copies were printed but at the time of the hearing 500 copies were published every two weeks and actually about 400 were being sold. The papers are given to the distributor and the distributor deals with the vendors. Young was selling the paper for fifteen cents, of which he gave ten cents to the distributor and kept five cents for himself.

Young reached the Square and was standing by a tree talking to some friends when two policemen came up and asked

4. "Every peddler shall secure from the Director of Finance of the City a permit for peddling and such permit for peddling shall be issued only after the following information shall have been obtained from the peddler:
 (1) The full name and address of the peddler;
 (2) The kind and character of merchandise, goods, foods or effects to be sold;
 (3) The location or route over which the peddler intends to sell or distribute his wares.
 In no instance shall any person having a bad character be permitted to obtain a permit."

5. "It shall be unlawful for bootblacks, candy sellers, peanut vendors, patent medicine men or peddlers of any other description to play their avocations in or around the squares or parks of the city."

for his identification and took his papers to look at them. They asked him if he had a license to sell merchandise and when he answered in the negative they told him a license was required. They advised him that one of the papers, not the Nola Express, contained "bad words" and had a nearby ice cream vendor confirm this to Young.

The two officers went to the patrol car to check on the necessity for a permit when Kendall Vick, who was walking on Chartres Street (one of the streets bounding the Square) with his wife Kathleen, came up to Young and asked to buy the Nola Express. Young told him that the police would not let him sell the paper, and the police told Vick that they could not allow him to sell the paper without a permit. Vick, who is an attorney, informed them that the Constitution "preempts the ordinance" and gave them a lecture on freedom of the press. The officers expressed their resentment to Vick for his intrusion into their investigation of Young and as Vick continued to insist upon his constitutional viewpoint he became so loud that he attracted a crowd of about fifty people.

When Vick would not desist and calm down at the officers' request to do so, the officers called a superior officer to come to assist them. Sergeant Barkley Emmons arrived on Chartres Street and pulled up to where the large crowd had gathered. While the officers were attempting to explain what had happened Vick kept interrupting and yelling in a loud voice, ignoring requests to calm down and telling Emmons that he was an attorney in the employ of a state representative. The sergeant then arrested both Vick and Young, and Vick was charged by affidavit with violation of 42–22, "disturbing the peace by being loud and boisterous" and "by creating a scene," and with violation of 49–6, "interfering with the police," and Young was charged with violation of 46–1, "peddling without a permit."

Almost a month after this incident Robert Northcutt, who lives in Pacifica, California, was arrested outside of Jackson Square for selling newspapers. He sold the Nola Express for fifteen cents, keeping ten cents for himself. According to him New Orleans' police officers told him after he was put into the patrol car that they considered the Nola Express slander against public officials of the city. According to him also, Municipal Judge Bucaro told him not to sell any more of the papers and dismissed his case so that he could report to San Francisco for his preinduction physical examination.

Although the hearing was on the motion for preliminary injunction, the parties argued in court also the propriety of declaratory relief and the case is regarded as submitted on both issues.

## INJUNCTIVE RELIEF

No showing has been made in this case which would justify the granting of the equitable relief of injunction against the prosecutions pending in the Municipal Court. The plaintiffs rely upon Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965) which requires a federal court to enjoin threatened state prosecution when there is reason to believe that the state's action will have a "chilling effect" upon a citizen's exercise of his rights under the First and Fourteenth Amendments. The Court found under the unusual circumstances of that case that threats to enforce statutes unconstitutional on their face were made in an effort to harass and discourage plaintiffs in the exercise of their First Amendment freedoms.

No comparable special circumstances have been shown in this case. The court finds no basis for the charge that the defendants are acting under the ordinances in furtherance of a plan or scheme to deprive plaintiffs of their constitutional rights, or for the charge that the arrests were made in bad faith to harass and intimidate the plaintiffs. The facts give this court no reason to believe that the arrests and prosecution of these plaintiffs will produce a "chilling effect on the right to come and go, and the right to buy or sell a newspaper

free from the fear of arbitrary arrest and imprisonment" as charged in the complaint.

The court is convinced from the evidence that the arrests of Young and Vick were not prompted by any plan or scheme to suppress the Nola Express. The arrests were made because Vick persisted overlong in his constitutional lecture to the police officers and made his remarks in such a loud voice that he was attracting a crowd. Patrolman David Sneed testified that he had no intention to arrest Young. He had been on the force one year and admitted that he mistakenly thought 45–1 required a permit for the sale of newspapers. He had received no order from the police department to arrest vendors of the Nola Express. The arrests were made at Sergeant Emmons direction and only after Vick had refused to abate his constitutional lecture and had attracted a crowd at the scene.

Sergeant Emmons who came to assist the two police officers had never seen or heard of the Nola Express before this incident. He is attached to the Fifth Police District, not the First within which Jackson Square is located, and was working overtime that night. He testified that he put Vick under arrest because Vick kept interrupting the officers who were attempting to explain the situation and kept yelling to the crowd in a high voice, and he might not have arrested Young except for Vick's behavior.

The testimony regarding the arrest of Robert Northcutt is not sufficient to show any plan or scheme to suppress the Nola Express or to intimidate and harass the plaintiffs in the exercise of their First Amendment rights.

 The Supreme Court recognized in *Dombrowski* that "federal interference with a State's good-faith administration of its criminal laws is peculiarly inconsistent with our federal framework." Interference by injunction is proper only when unusual circumstances require it to prevent irreparable injury. Douglas v. City of Jeannette, 319 U.S. 157, 63 S. Ct. 877, 87 L.Ed. 1324 (1943), followed

by this Court in Brock v. Schiro, D.C., 264 F.Supp. 330 (1967). The circumstances of this case present no reason to disrupt the prosecutions in the Municipal Court by injunction.

### DECLARATORY RELIEF

██ The plaintiffs contend that the court must rule on the constitutionality of the ordinances attacked under the prayer for declaratory relief in view of the decision of the United States Supreme Court in Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967). They argue that abstention is inappropriate in this case because in *Zwickler* the Court made clear "the duty upon all levels of the federal judiciary to give due respect to a suitor's choice of a federal forum for the hearing and decision of his federal constitutional claims" and stressed that abstention is flatly inappropriate, except under narrowly limited "special circumstances," such as the susceptibility of a state statute or city ordinance to a construction by the state courts that would avoid or modify the constitutional question, which do not exist here.

After careful study the court cannot agree that *Zwickler* is so doctrinaire that it deprives the court of discretion to abstain under the circumstances of this case. In the *Zwickler* case the plaintiff sought injunctive and declaratory relief from future arrest and prosecution under a New York Penal law making it a crime to disseminate, in quantity, anonymous political leaflets. A previous conviction under the law had been reversed by a New York Supreme Court on state law grounds and this reversal was affirmed by the New York Court of Appeals. Fearing future arrests for distribution, Zwickler invoked the jurisdiction of a three-judge federal district court, challenging the statute on the ground that it was overbroad and therefore violated the constitutional guarantee of free expression.

The three-judge court, one judge dissenting, applied the doctrine of abstention and dismissed the case because no

"special circumstances" justifying the exercise of federal judicial equity power were present and because *Zwickler* had a declaratory judgment remedy in state courts, and he also could assert his constitutional challenge in defense of any future criminal prosecution in a state court. The Supreme Court of the United States reversed, emphasizing the expanding by Congress of the federal judicial power since the Civil War which "imposed the duty upon all levels of the federal judiciary to give due respect to a suitor's choice of a federal forum for the hearing and decision of his federal constitutional claims." From this the Court reasoned that the suitor's choice of a federal forum must be respected, and a federal court lacks discretion to abstain from ruling on a request for declaratory relief, when the suitor's constitutional attack is that the statute is facially void for overbreadth, thus offending the constitutional principle that "a governmental purpose to control or prevent activities constitutionally subject to state regulation may not be achieved by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms." Zwickler v. Koota, supra, 88 S.Ct. at p. 396.

The circumstance present here, not present in *Zwickler,* is that prosecutions are pending in the municipal court under three of the ordinances under attack. Does the rationale of that case of giving a suitor a "choice of a federal forum for the hearing and decision of his federal constitutional claims," particularly in the area of First Amendment rights, thereby denying a federal court of discretion to abstain, extend to a case where a prosecution is pending under the statute attacked? Does the suitor's choice to proceed in a federal forum allow him to choose to assert affirmatively his federal constitutional claims in a federal forum and ignore the state forum in which he is already being proceeded against where the same claims could be made defensively? After much deliberation the court would answer both questions in the negative.

Far more serious considerations in the federal-state relationship are involved when a state prosecution is pending under the statute from which declaratory relief is sought in a federal forum than existed in *Zwickler.* When no prosecution is pending a lack of discretion in a federal court to abstain simply relieves the suitor of having first to proceed in a state forum. When a prosecution is pending lack of discretion in the federal court to abstain disrupts or intrudes into a pending state proceeding and takes from the state forum issues appropriate for determination in that proceeding. Giving a suitor a choice of a federal forum for his federal constitutional claims in this case under the circumstance of a pending prosecution could be justified, in my opinion, only if it can be presumed that state courts will not responsibly guard, enforce and protect First Amendment rights. No such presumption ought to be indulged.

The court observed in *Zwickler* that "to force the plaintiff who has commenced a federal action to suffer the delay of state court proceedings might itself effect the impermissible chilling of the very constitutional right he seeks to protect." See *Zwickler,* supra, 88 S. Ct. at p. 397. In the instant case there would be no delay of state court proceedings. They were in progress *before* the plaintiffs commenced their federal action. Those proceedings have in fact been delayed by this one. If *Zwickler,* which involved no pending prosecution, applies with equal force to limit a federal court's discretion to abstain from considering the merits of a request for declaratory relief when a prosecution is pending, ingenious lawyers can delay state prosecutions and involve two courts in them by challenging the statute or ordinance under which the prosecution is brought on the ground of "overbreadth" violation of First Amendment freedoms. Practical considerations therefore would appear to demand as a matter of policy that federal courts have more discretion to abstain when a prosecution is pending than *Zwickler* allows.

Doubts about the application of *Zwickler* when a prosecution is pending were expressed by a three-judge court in another section of this court recently in Shaw v. Garrison, 293 F.Supp. 937, affirmed, 393 U.S. 220, 89 S.Ct. 453, 21 L.Ed.2d 392.

"* * * despite the language of *Zwickler*, we entertain serious doubts about the appropriateness of stopping a pending state prosecution to consider a request of plaintiff for a declaratory judgment as to the constitutionality of R.S. 14:26, the conspiracy statute under which he [Shaw] is being prosecuted. Although *Zwickler* stated that the doctrine of abstention could not be invoked in the circumstances of that case, it did not nullify the well-settled rule that the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, is discretionary, rather than mandatory, and declaratory relief may be withheld by the district court in its discretion in appropriate cases. * * *

"Our doubt about the propriety of giving consideration to the request for declaratory relief in the circumstances of this case is based upon our concern that by permitting a defendant to interrupt a state court prosecution to challenge the statute under which he is being prosecuted, we could open the door to constant disruption of state court criminal proceedings. Ingenious counsel for a defendant in a state criminal prosecution would not find it difficult to phrase his defense in terms of constitutionality so as to make it possible to bring a suit for declaratory relief in a federal district court during the pendency of a state court prosecution. This might well do violence to the strong federal policy of comity as expressed by the Supreme Court in Stefanelli v. Minard, 342 U.S. 117, 72 S.Ct. 118, 96 L.Ed. 138 (1951) and Cleary v. Bolger, 371 U.S. 392, 83 S.Ct. 385, 9 L.Ed. 390 (1963)." [6]

The Supreme Court since *Zwickler* has indicated in its affirmance on May 20, 1968 of the judgment in the case of Brooks v. Briley, 274 F.Supp. 538 (M.D. Tenn., Oct. 9, 1968), at least by implication, that when a prosecution is pending in a state forum federal courts are not deprived of discretion to abstain from ruling on the merits of a request for declaratory relief. See per curiam affirmance, 391 U.S. 361, 88 S.Ct. 1671, 20 L.Ed.2d 647. In the *Brooks* case a three-judge district court was convened to consider plaintiffs' request for injunctive and declaratory relief from the application of numerous criminal statutes and ordinances. Under some of these (denouncing the carrying of dangerous weapons, disorderly conduct and inciting a riot) plaintiffs had been arrested during the North Nashville riots occurring on April 8, 9 and 10, 1967, charges had been made, and proceedings were pending. These laws were attacked for alleged vagueness and overbreadth and for invalidity as applied to plaintiffs and others similarly situated. The court denied injunctive and declaratory relief and dismissed the action, saying:

"* * * There is no showing of irreparable injury which is requisite to justify federal equitable relief, or of the special circumstances that would warrant federal disruption of the normal pattern of raising constitutional defenses in the course of state criminal proceedings. There is a fully adequate remedy available to the plaintiffs in the defense of their state court proceedings. If the challenged laws * * * are void for vagueness or overbreadth, the state courts are fully capable of so ruling, and there is no reason in this case to suppose that they would not do so. Or, as an alternative, the state courts may find that the laws, although facially challengeable, may be saved by an appropriate limiting construction. * * *

6. Despite the court's doubts that *Zwickler* deprived it of discretion to abstain where a prosecution was pending, it nevertheless chose not to exercise that discretion

and, after considering the attack on the conspiracy statute, ruled that the statute was constitutional.

"While the *Dombrowski* opinion contains language which may be susceptible of the interpretation that abstention is never appropriate where statutes regulating expression are properly challenged for facial vagueness or overbreadth, we do not believe that the Supreme Court has committed itself to such a doctrinaire position where, as here, there is no predicate for finding either a bad faith invocation or use of criminal laws, or chilling effects or irreparable injury if state criminal proceedings are allowed to continue. * * *"

The court furthermore was of the opinion that, when a prosecution is pending, "The same principles of comity and federalism require that when injunctive relief is not appropriate, neither is relief appropriate under the declaratory judgment statute." [7]

In Zwicker v. Boll, 270 F.Supp. 131 (W.D.Wis., June 6, 1967) action was brought in federal court while state court prosecutions were pending for declaratory judgment or injunctive relief to prevent plaintiffs from being prosecuted under the allegedly unconstitutional Wisconsin disorderly conduct statute. The three-judge court, one judge dissenting, denied relief and dismissed the case. Judge Myron L. Gordon was of the opinion that

"The legal and factual issues in this court are the same as those which would have to be resolved in the state court actions if they were permitted to proceed. The nub question is whether it is appropriate for this court to step in and determine these issues first. Applying common sense principles of comity to the existing situation, I find no compelling reason why this court should assert power to decide these issues in this action and thus displace the state court from

a resolution of the same issues in an action already before it."

The judgment in this case was also affirmed by the Supreme Court after *Zwickler*. See per curiam affirmance, 88 S.Ct. 1666 (May 20, 1968).

In my opinion, therefore, *Zwickler* does not deprive this court of discretion to abstain from considering the request for declaratory relief as to the ordinances under which prosecutions are pending, 42-22, 46-1 and 49-6, and the court exercises that discretion to abstain.

The plaintiffs have couched their attack on the other two ordinances under which no prosecutions are pending, 43-47 and 45-1, in language including "overbreadth" and challenging the ordinances as repugnant on their face to the First Amendment. They have thus attempted to bring their request for declaratory relief as to these ordinances within the Zwickler prohibition against abstention. A careful analysis of their arguments shows, however, that the real basis of their attack is that these ordinances are vague and indefinite and susceptible to unconstitutional application.

Neither ordinance 43-47, which prohibits peddlers from plying their avocations in or around the squares or parks of the city, nor ordinance 45-1, which requires every peddler to secure a permit, specifically applies to newspaper vendors. Patrolman David Sneed testified that he was mistaken about the application of 45-1 to newspaper vendors. Judge Bucaro changed the charge against Mark Young from a violation of 45-1 to 46-1 and he dismissed the charge under 45-1 against Robert Northcutt. Northcutt testified that the Judge dismissed the charge in order to allow him to appear in San Francisco for his pre-induction physical, but it is equally probable that the dismissal was entered because the Judge considered 45-1 does not apply to newspaper vendors.

7. Cf. Davis v. Francois, 395 F.2d 730 (5th Cir. May 28, 1968) which was decided only eight days after the affirmance of *Brooks* and the Court therefore may not have been made aware of the affirmance or have considered the effect of it; Baker v. Bindner, 274 F.Supp. 658 (W.D.Ky. 1967); Landry v. Daley, 280 F.Supp. 938 (N.D.Ill.1968).

A limiting interpretation by the state courts could save these ordinances from the attack made by the plaintiffs. The more forceful the argument of plaintiffs that a broad interpretation will render an ordinance unconstitutional the more constrained a state court would be to give the ordinance a limiting, constitutional interpretation. Under these circumstances *Zwickler* does not apply and I would abstain also from passing on the constitutionality of these ordinances under the request for declaratory relief.

For the reasons assigned the motion for preliminary injunction is denied, the request for declaratory relief in the complaint, as amended, is denied, and plaintiffs' action will be dismissed.

The Clerk will prepare judgment accordingly.