**HARTSVILLE THEATRES, INC., a South Carolina Corporation, Jerry Ballard, and Willie J. Harley, Plaintiffs,**

v.

**C. Lavaun FOX, Paul D. Grant and John Doe, Defendants.**

**Civ. A. No. 70–245.**

United States District Court, D. South Carolina, Aiken Division.

Argued Jan. 25, 1971.

Decided Feb. 23, 1971.

defendant's liability was predicated upon an oral contract to provide temporary insurance coverage.

George S. Daley, Jr., Charlotte, N. C., and Jack McGuinn, Columbia, S. C., for plaintiffs.

Daniel R. McLeod, Atty. Gen., and John P. Wilson, Asst. Atty. Gen., Columbia, S. C., for defendants.

Before HAYNSWORTH, Chief Judge, and SIMONS and RUSSELL, District Judges.

DONALD RUSSELL, District Judge:

Claiming a violation of their First Amendment rights as a result of certain proceedings begun under Section 16–414.2, Code of South Carolina (1962), plaintiffs seek both injunctive and declaratory relief. We dismiss.

The facts giving rise to this controversy are not in dispute. On March 13, 1970, the plaintiffs exhibited commercially at a theatre in Aiken, South Carolina, the film "Cherry, Harry and Raquel". The defendants, who are the

Sheriff and Assistant Solicitor of Aiken County, personally viewed the film at a commercial showing by the plaintiffs on that date. As a result, the defendants arrested the plaintiffs on a charge of violating the South Carolina Obscenity Statute, Section 16–414.2, Code of South Carolina (1962) and, incident thereto, seized the film itself. Five days later the plaintiffs instituted this action on the ground that the statute under which they had been arrested violated their First Amendment rights.[1] In their complaint, they alleged that the film which prompted the arrest had been shown "in many communities throughout South Carolina" without incident. They, also, claimed on information and belief, that movie exhibitors "face arrests for any future exhibition of 'X' rated films, under color of" the challenged statute. They did not assert, however, any threats, harassment or seizures on the part of the defendants in connection with any "X" rated films other than the single film involved in this proceeding; and it should be noted that, by plaintiffs' own affirmative allegations, the picture involved here, though "X" rated, had been exhibited in many areas of South Carolina without any charges or threats being made under the challenged statute. The plaintiffs prayed the convocation of a Three-Judge Court under Sections 2281 and 2282, 28 U.S.C., the granting of temporary and permanent injunctive relief against the enforcement of the challenged statute, and a judgment commanding the return of the seized film.

Following the filing of this action by the plaintiffs, the parties agreed on March 30, 1970, for a return of the seized film to the plaintiffs. The parties formalized this action in a consent order, which found the seizure invalid under the authority of Tyrone, Inc. v. Wilkinson (4th Cir. 1969) 410 F.2d 639, cert. den. 396 U.S. 985, 90 S.Ct. 477, 24 L.Ed.2d 449, but provided that the film would be made available to the defendants for use in any subsequent prosecution, with reservation by the plaintiffs of any right to object to its admissibility at that time. In this same consent order, entered on April 24, 1970, it was agreed that the convocation of a Three-Judge Court was unnecessary. The order proceeded to find "that the course of conduct herein described will not be repeated, and therefore, (the Court) declines to enter an injunction herein." The order concluded with the sentence:

"That the Court will retain jurisdiction in this case for a period of six months at the end of which, should nothing further be heard from the plaintiff(s), the complaint will be dismissed."

On May 1, 1970, at plaintiffs' request, a preliminary hearing, adversary in nature, was held in Aiken before a Magistrate, who, after viewing the film and hearing testimony, found probable cause that the film was obscene within the meaning of Section 16–414.2 and bound the plaintiffs over for action by the Grand Jury. A true bill of indictment, charging a violation of Section 46–414.2 was returned against the plaintiffs at the May, 1970, term of the Court of General Sessions for Aiken County. Following this action, the plaintiffs, dissatisfied that the Magistrate had not sustained their legal claims, requested the restoration of the cause to the calendar and the convocation of a Three-Judge Court, and renewed their prayer for injunctive and declaratory relief. A Three-Judge Court was thereupon convened and a hearing had. At the hearing, the plaintiffs disclaimed any intent to intimate "bad faith by Defendants", asked "for no federal factual determination" and sought "only a conclusion of law as to the statute" under which the plaintiffs had been indicted.

Prior to the hearing in this Court, the Supreme Court of South Carolina was confronted in another case with a consti-

---

1. The grounds of attack are almost identical with those asserted in Adler v.

Pomerleau (D.C.Md.1970) 313 F.Supp. 277, 283 (Three-Judge Court).

tutional attack under Section 16–414.2 on many of the grounds posed by the plaintiffs in this proceeding. In sustaining the constitutionality of the statute, that Court, recognizing that federal constitutional questions were controlled in their resolution by pertinent decisions of the United States Supreme Court and, after a perspicacious review of such decisions, gave to the statute an application that conformed to the standards enunciated in what it conceived to be the controlling federal authorities in the vexing field of definitional obscenity. State v. Burgin, S.C., 178 S.E.2d 325, filed December 16, 1970.[2]

At the outset, the defendants contend that on familiar principles of comity as well as by reason of the positive command of Section 2283, 28 U.S.C., this Court should dismiss the action without considering the validity of the substantive constitutional issues sought to be raised by the plaintiffs. Since, in our opinion, Section 2283 effectively denies to this Court power to grant relief here, it is unnecessary to consider either the issue of comity or the constitutionality of the statute challenged.

■ Section 2283, 28 U.S.C. expressly denies to a federal court the power to grant an injunction staying pending "proceedings" in a state court, subject only to certain specific exceptions. This "clear cut" statutory prohibition, as the Court recently emphasized in Atlantic C. L. R. Co. v. Brotherhood of Locomotive Engineers (1970) 398 U.S. 281, 294, 90 S.Ct. 1739, 26 L.Ed.2d 234, is more than a mere statement of "a principle of com-

ity"; it represents "a binding rule on the power of the federal courts" a rule which may not be ignored, even though the State "proceedings" sought to be stayed "interfere with a protected federal right * * *, even when the interference is unmistakably clear" and "regardless of whether the federal court itself has jurisdiction over the controversy."[3] It is "not to be whittled away by judicial improvisation" nor are its exceptions · to be "enlarged by loose statutory construction."[4]

■ There are, it is true, a number of decisions, which have treated Section 2283 as simply an expression of the doctrine of comity, to be applied in the exercise of a judicial discretion; and, in the exercise of that discretion, they have recognized and applied a so-called *Dombrowski* exception to the statute. See, Sheridan v. Garrison (5th Cir. 1969) 415 F.2d 699, 704–705, cert. den. 396 U.S. 1040, 90 S.Ct. 685, 24 L.Ed.2d 685; Wallace v. Brewer (D.C.Ala.1970) 315 F.Supp. 431, 450–451 (Three-Judge Court).[5] These decisions find no support in either the majority or dissenting opinions in *Dombrowski*, both of which emphasize that there were no *pending* State proceedings and that, for such reason, Section 2283 was not applicable; the inference is warranted that if there had been pending State "proceedings", Section 2283 would have barred relief. These decisions, also, preceding as they do Justice Black's opinion in *Atlantic Coast Line*, are at variance with the construction of 2283 stated in that opinion and must be considered as overruled by

2. That suits involving attempts at constitutional definitions of obscenity are both vexing and confusing, see the comment in Adler v. Pomerleau, *supra*, at p. 284 (313 F.Supp.):
"Particularly is this so when one observes that members of the Supreme Court have written 55 separate opinions in 13 cases on the subject of obscenity in the 10 years prior to 1968 and have not been able to agree on what it is or how to deal with it."
See, also, United States v. Dellapia (2d Cir. 1970) 433 F.2d 1252, 1254–1255.

3. (Quoted from Atlantic C. L. R. Co. v. Engineers, *supra*, at p. 294, of 398 U.S., at p. 1747 of 90 S.Ct.)

4. Amalgamated Clothing Workers v. Richman Bros. (1955) 348 U.S. 511, 514, 75 S.Ct. 452, 99 L.Ed. 600; Atlantic C. L. R. Co. v. Engineers, *supra*, 398 U.S. at p. 287, 90 S.Ct. 1739, 1743.

5. See, Washington v. Garmire (D.C.Fla. 1970) 317 F.Supp. 1384, 1386, note 1.

it.[6] Of course, if the State procedure offered no means for a plaintiff to secure a vindication of his rights, such as was the situation in Caulder v. Durham Housing Authority (4th Cir. 1970) 433 F.2d 998, 1009, the statute may not be used as an instrument to prevent a plaintiff from securing a vindication of his constitutional rights.[7] That situation, however, does not confront us here.

■■ The application of the statute to this proceeding thus depends on whether there were "proceedings" pending in the State Court at the time this action was filed. "Proceedings", as used in the statute, is to be given a "comprehensive" meaning and "includes all steps taken or which may be taken in the state court or by its officers from the institution to the close of the final process." Hill v. Martin (1935) 296 U.S. 393, 403, 56 S.Ct. 278, 283, 80 L.Ed. 293; Resolute Insurance Company v. State of North Carolina (D.C.N.C.1967) 276 F.Supp. 660, 667, aff. 397 F.2d 586, cert. denied 393 U.S. 978, 89 S.Ct. 446, 21 L.Ed.2d 439. An arrest, it would seem, satisfies this "comprehensive" definition of "proceedings."[8] Since plaintiffs' arrest preceded the commencement of this action and was pending in the State Court when plaintiffs filed this action, injunctive relief against such pending proceedings in the State Court is barred by Section 2283. Baines v. City of Danville (4th Cir. 1964) 337 F.2d 579, cert. den. Chase v. McCain, 381 U.S. 939, 85 S.Ct. 1772, 14 L.Ed.2d 702, reh. den. 385 U.S. 890, 87 S.Ct. 12, 17 L.Ed.2d 121, aff. 384 U.S. 890, 86 S.Ct. 1915, 16 L.Ed.2d 996.

■ The plaintiffs urge that, though Section 2283 may foreclose injunctive relief against the pending proceedings, such statute constitutes no impediment to a declaration of invalidity of the challenged statute under the Declaratory Judgment Act, 28 U.S.C., Sec. 2201–2. In a number of cases Federal Courts have assumed such power and support for the plaintiffs' position is found in the note in 83 Har.L.Rev. 1876. In large part, argument in favor of this theory is predicated on Zwickler v. Koota (1967) 389 U.S. 241, 254, 88 S.Ct. 391, 19 L.Ed.2d 444.[9] As authority for such availability of the remedy of declaratory judgment, *Zwickler*, however, is, as the author of the note in 83 Har.L.Rev. 1877–8, note 38, observes, "inconclusive because the case is distinguishable as dealing with a threatened prosecution". Actually, as Samuels v. Mackell (D.C.N.Y.1968) 288 F.Supp. 348, 355–356, prob. jurisdiction noted 393 U.S. 975, 89 S.Ct. 453, 21 L.Ed.2d 437, argued April 29, 1970, 38 L.W. 3429, noted in distinguishing it, "Zwickler was a classic case for

6. See Mitchum v. Foster (D.C.Fla.1970) 315 F.Supp. 1387 (Three-Judge Court), (U.' S. appeal pending) which arose in the Fifth Circuit, as did both the *Garrison* and *Wallace Cases*, but which was decided after the *Atlantic Coast Line Case.*

7. Cf., Broyhill v. Morris (4th Cir. 1969) 408 F.2d 820, 822:
 "Under the decisions of the Supreme Court as we read them, it is appropriate as a necessary part of deciding whether § 2283 applies, to inquire into the nature and effects of the state action complained of. It makes a difference whether the right allegedly invaded has constitutional protection and *whether other and adequate state remedies exist.*" (Italics added.)

8. See, Wallace v. Brewer, *supra* 315 F.Supp. at p. 451, note 39; Lynch v. Household Finance Corporation (D.C. Conn.1970) 318 F.Supp. 1111, 1115 (Three-Judge Court) ; Brooks v. Briley (D.C.Tenn.1967) 274 F.Supp. 538, 553, aff. 391 U.S. 361, 88 S.Ct. 1671, 20 L.Ed.2d 647.

9. The specific language that is generally quoted in this connection is (389 U.S. p. 254, 88 S.Ct. p. 399) :
 "For a request for a declaratory judgment that a state statute is overbroad on its face must be considered independently of any request for injunctive relief against the enforcement of that statute. We hold that a federal district court has the duty to decide the appropriateness and the merits of the declaratory request irrespective of its conclusion as to the propriety of the issuance of the injunction."

declaratory relief; the plaintiff needed to know promptly whether he could distribute anonymous handbills free of New York's threat of punishment." The statute assailed in *Zwickler* forbade the distribution of anonymous handbills in connection with public elections. The election in which Zwickler was interested was at hand. Because of a prior unsuccessful prosecution, he was under justifiable apprehension of arrest should he distribute such handbills. There was, however, no pending proceeding in the state court in which he might assert his rights. Yet the immediacy of the election made it imperative that he know his rights. Without any adequate remedy, he had thus what Judge Friendly described as "a classic case for declaratory relief." See, also, Vick v. Schiro (D.C. La.1969) 296 F.Supp. 173, 177–180. *Zwickler,* like *Dombrowski,* must be considered in the light of these special factual circumstances and should normally be limited to those cases where there is no pending state proceeding. This conclusion seems warranted by the holding in three cases arising subsequent to *Zwickler,* in which the lower Courts' ruling that a declaratory judgment is inappropriate if injunctive relief is inhibited by Section 2283 was affirmed *per curiam* by the Supreme Court.[10]

To grant declaratory relief in the manner suggested by the plaintiffs in this case would "amount(s) to the use of a procedural device to circumvent two crucial policies enunciated by Congress in the Three-Judge Court Act and the Anti-Injunction Act—avoidance of improvident doom of a statewide policy by

a single federal judge and noninterference by federal courts in pending State prosecutions." Maraist, FEDERAL INJUNCTIVE RELIEF AGAINST STATE COURT PROCEEDINGS: THE SIGNIFICANCE OF DOMBROWSKI, 48 Tex.L.Rev. 535, 605 (1970). Under this theory, pending State prosecutions, immune from direct injunctive relief under Section 2283, could be enjoined indirectly through the two-step procedure of securing a declaratory judgment followed by an injunction to support it.[11] This would be doing indirectly what could not be done directly.[12] So much is conceded in 83 Har.L.Rev. 1870: "Such a federal court (declaratory) judgment could, by its effect on the issues in the pending state proceeding, have an impact little different from that of an injunction against the current action." Such bland nullification of Section 2283 would seem to run afoul the plain admonition of *Atlantic Coast Line R. Co.* against the emasculation of the statute "by loose statutory construction" and the whittling away of its effect "by judicial improvisation". As the Court in Machesky v. Bizzell (5th Cir. 1969) 414 F.2d 283, 286, said in rejecting a similar argument:

"Assuming *arguendo* that the court could not grant injunctive relief, it would be most unusual to render a declaratory judgment under the circumstances declaring the state court order unconstitutional. This would set up a direct confrontation with the state court with no power in the federal court to make its judgment effective. One can scarcely envision a more un-

10. Brooks v. Briley, *supra* 274 F.Supp. 538, aff. 391 U.S. 361, 88 S.Ct. 1671, 20 L.Ed.2d 647; Zwicker v. Boll (D.C. Wis.1967) 270 F.Supp. 131, aff. 391 U.S. 353, 88 S.Ct. 1666, 20 L.Ed.2d 642; Shaw v. Garrison (D.C.La.1968) 293 F. Supp. 937, aff. (1968) 393 U.S. 220, 89 S.Ct. 453, 21 L.Ed.2d 392. See, also, the excellent opinion of Judge Friendly in Samuels v. Mackell, *supra,* 288 F.Supp. 348, 355–356.

11. For an illustration of this two-step procedure, see Babbitz v. McCann (D.C.

Wis.1970), 320 F.Supp. 219, filed Nov. 18, 1970, being the sequel to the declaratory judgment granted in 310 F.Supp. 293.

12. Cf., Rolls-Royce Limited, Derby, England v. United States (1966) 364 F.2d 415, 419, 176 Ct.Cl. 694:
 "The cases are legion that the Declaratory Judgment Act cannot be used to give relief indirectly that cannot be given directly."

toward predicament for a court, be it federal or state. On the other hand, if the court was possessed of power in the circumstances, it would follow that action on the declaratory judgment prayer would be a necessary concomitant."

Such circuitous nullification of Section 2283 through resort to the device of a declaratory judgment was rebuffed in Holloway House Publishing Co. v. Sharp (9th Cir. 1969) 408 F.2d 656; Doe v. Randall (D.C.Minn.1970) 314 F.Supp. 32, 37 (Three-Judge Court) (U.S.Appeal pending); Hall v. Crosland (D.C.Ala. 1970) 311 F.Supp. 106, 107; Cunningham v. A. J. Aberman, Inc. (D.C.Pa. 1965) 252 F.Supp. 602, 605, aff. 358 F.2d 747; Nongard v. Burlington County Bridge Comm'n. (3d Cir. 1956) 229 F.2d 622, 625; H. J. Heinz Co. v. Owens (9th Cir. 1951) 189 F.2d 505, 507–509, cert. denied 342 U.S. 905, 72 S.Ct. 294, 96 L. Ed. 677. In the *Doe Case, supra,* the Court bluntly put it:

> "The law specifically prohibits our issuing an injunction in these circumstances, 28 U.S.C., § 2283; and this prohibition cannot be avoided by the grant of a declaratory judgment because the same principles of comity and federalism pertain."

And it is significant that when Harris v. Younger (D.C.Cal.1968) 281 F.Supp. 507, rev'd 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669, in which a Three-Judge Court had granted a declaratory judgment without considering the applicability of Section 2283, was heard on appeal by the Supreme Court, the only issues on which that Court desired argument were those involving the doctrine of comity and Section 2283. 38 L.W. 3429.

In accordance with what we conceive to be the better reasoned authorities and giving proper regard to the manifest purpose and clear language of the statute itself, we conclude that the prohibition commanded by Section 2283 may not be avoided or circumvented by the expedient of an application for a declaratory judgment.

Even were there no statutory prohibition such as 2283, declaratory relief would not be proper in this case. Declaratory judgments are matters of judicial discretion, to be exercised in accordance with recognized equitable principles. Public Service Comm'n. v. Wycoff Co. (1952) 344 U.S. 237, 73 S.Ct. 236, 97 L.Ed. 291. In actions seeking to interfere with state proceedings, they need not be granted where there is an adequate state remedy available. There is in this case a remedy available to the plaintiffs. The plaintiffs can assert such federal constitutional rights as they may claim in their pending state prosecution. The State Court has already demonstrated that it will give careful attention to any such constitutional claims and will endeavor to resolve them within the controlling principles enunciated by the United States Supreme Court. State v. Burgin, *supra.* It would seem that the plaintiffs initially chose to assert their defenses in the State Court. When, however, the Magistrate failed to rule in their favor, they apparently changed their strategy and hastened to seek to reopen these proceedings and renewed their request, earlier abandoned, for injunctive relief herein. Nevertheless, the State Court is still available to the plaintiffs for the redress of their claim of constitutional rights. In the meantime, there are no threats of other prosecutions. Seemingly, the defendants are staying their hands until there has been a resolution of plaintiffs' claims. So much is conceded in the consent order of April 24, 1970, submitted by the parties to this action. It is true there is some intimation to the contrary in the complaint, denied by the defendants. The plaintiffs have, however, made no effort to support such allegation in this hearing. On the contrary, they withdrew at the hearing any request for a "factual determination" in this Court and contented themselves with a request for "only a conclusion of law as to the statute". The conclusory allegation of the complaint of threatened future prosecution

can, therefore, be disregarded. As the consent order states, this is a single prosecution, including a single film. The pendency of such prosecution has not, so far as this record shows, deterred the exhibition in this State of other "X" rated films. This Court must take public notice of the fact that "X" rated films are being exhibited at this time all over South Carolina. There is in this case no chilling of First Amendment rights except such as are "incidental to every criminal proceeding brought lawfully and in good faith". Under the circumstances, it seems clear that, even were there power to entertain here a declaratory judgment action, this Court should defer to the pending State action and properly exercise its discretion to withhold declaratory relief. See, Adler v. Pomerleau, *supra*.

 Finally, the plaintiffs assert that, even though this Court may be precluded by Section 2283 from interfering with the *pending* proceedings and even if declaratory relief is not available, such statute does not prevent relief against future interference and for this reason they are entitled to injunctive relief. Baines v. City of Danville, *supra*. As we have already observed, the record, however, is barren of any evidence of threatened future prosecutions. Indeed, in the consent order entered in April, 1970, as has already been pointed out, the plaintiffs abandoned any demand for injunctive relief against future action by the defendants because it was agreed that the alleged illegal conduct of the defendants would "not be repeated". Nothing has occurred since that time, so far as the record before us shows, that would require a new demand for injunctive relief against the threat of either further future prosecutions or seizures.

In summary, it is our opinion that the plaintiffs are barred both by Section 2283 and by general equity principles from maintaining this action and it is accordingly unnecessary for us to con-

sider the substantive issue of the constitutionality of Section 16–414.2.

Let the parties submit an appropriate order of judgment dismissing the action.